393 So.2d 700 (1981)
STATE of Louisiana
v.
James E. GUTTER.
No. 80-KA-1684.
Supreme Court of Louisiana.
January 26, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Asst. Dist. Atty., for plaintiff-appellee.
Michele Fournet, Baton Rouge, for defendant-appellant.
P. J. LABORDE, Jr., Justice ad hoc.[*]
By bill of information filed on September 26, 1979, defendant James E. Gutter was charged with two counts of armed robbery in violation of La.R.S. 14:64. Following trial before a twelve member jury, defendant was convicted of both counts and sentenced to two five-year terms at hard labor, said sentences to run concurrently. On appeal, defendant relies on two arguments for reversal of his conviction and sentence.

FACTS
At about 10:30 p. m. on September 7, 1979, the victimsBruce Jackson and David Tylerpulled into a Fina service station located at the intersection of Blount Road and Louisiana Highway 19 in Baton Rouge, Louisiana. Jackson parked his car on the *701 side of the service station and both he and Tyler walked toward the station to buy a coke and some cigarettes. Finding the door locked, the pair returned to Jackson's car.
As Jackson and Tyler were getting in their car, a second vehicle pulled in directly behind them. One of the three occupants of the second vehicle approached the Jackson vehicle and asked Jackson for a dollar. After both Jackson and Tyler refused his request, the man left, only to return moments later with a companion. One of these two individuals walked over to Tyler who was sitting on the passenger's side, held a pistol up to his face, and demanded money from him. After Tyler surrendered his Timex wristwatch and $25.00 in cash, the assailant handed the gun over the roof of the car to his companion on the other side who then proceeded, at gun point, to rob Jackson of $28.00 in cash. It was about this time during the course of the robberies that Tyler, and later Jackson, noticed the third individual standing about a foot from the rear of Jackson's car. This third man was later apprehended and identified as James E. Gutter, the defendant herein. Gutter's two companions were never apprehended and Gutter alone was tried for two counts of armed robbery. At the trial, the State utilized a conspiracy theory to attribute the acts of Gutter's companions to Gutter, thus making it possible to convict Gutter of the armed robberies.
ASSIGNMENTS OF ERROR NOS. 4, 6 AND 9
Gutter's first argument focuses on the State's use of a conspiracy theory to secure his convictions for both counts of armed robbery. More particularly, Gutter contends that the trial judge erred in permitting the state's attorney to rely on a conspiracy theory even though he, Gutter, was not charged with the separate and distinct crime of conspiracy. Gutter also contends that because the State failed to establish a prima facie case of conspiracy, the trial judge erred in charging the jury with that law. Gutter's motion for a new trial, based in part on these contentions, was denied.
Where, as here, a defendant is not charged with the inchoate crime of conspiracy but rather with a substantive offense such as armed robbery, reference to the law of conspiracy may nevertheless be relevant and permissible to allow the state to take advantage of the evidentiary rules found in La.R.S. 15:455, which provides:
Each coconspirator is deemed to assent to or to command whatever is said or done in furtherance of the common enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this affect a prima facie case of conspiracy must have been established. (Emphasis added.)
By its term then, the references and allusions to the law of conspiracy were proper only if the State adduced evidence sufficient to establish a prima facie case of conspiracy. La.R.S. 15:455.
It is necessary to define a conspiracy in order to then determine whether a prima facie case of conspiracy has been established. The substantive offense of criminal conspiracy is defined in La.R.S. 14:26 as the agreement or combination of two or more persons for the specific purpose of committing any crime, provided however, that such an agreement or combination shall not amount to a criminal conspiracy unless, in addition to such combination or agreement, one or more of the parties does an act in furtherance of the object of the agreement or combination.
Louisiana Courts have held that a prima facie case of conspiracy is presented when the State introduces evidence which, if unrebutted, would be sufficient to establish the fact of conspiracy. State v. McCoy, 395 So.2d 319 (La.1980).
Bearing these principles in mind, we find that there was a prima facie showing that Gutter agreed or combined with his two companions for the specific purpose of committing a crime.
*702 The record contains direct eyewitness testimony from both victims regarding Gutter's participation in the robberies. Their testimony is supplemented by Gutter's statement given to the police subsequent to his arrest and advisement of his rights.
A review of the record indicates that Gutter was the driver of the vehicle which turned into the darkened service station and pulled in directly behind the Jackson vehicle. During the actual perpetration of the robberies, Gutter stood approximately one foot from the rear of Jackson's car. From his position, Gutter was able to observe the robberies, yet he made no attempt to interfere with or otherwise question the acts of his companions. An available inference, supported by Jackson's testimony, is that Gutter served as a "lookout" for his two companions. This inference is strengthened by evidence establishing that immediately after the robberies, Gutter returned to his car with his two companions whereupon one of them handed Tyler's wristwatch to Gutter who accepted it. Thereafter, the trio divided the stolen monies between themselves, climbed into their vehicle, then left together with Gutter again at the wheel.[1]
The victims reported the robbery to the police. They also gave the police the license number of the vehicle used by the trio.
The car was registered to Irene Gutter who lived at 1900 Blount Road, about onehalf mile from the scene of the robberies. Upon arrival at that address, the police located the car and spoke with Irene Gutter's sonJames, the defendant herein. The police noticed that James Gutter was wearing a Timex wristwatch similar to the one described by the victims. Gutter was then detained and informed of his rights. The victims were called and they identified Gutter as the individual who stood behind their vehicle during the armed robberies.
Considering only the evidence presented by the State, it can fairly be said that the State made a showing that two or more persons committed a crime and that Gutter either combined or agreed to commit the criminal act. We are satisfied that a prima facie case of conspiracy has been established. Therefore, no errors resulted either from the references to the law of conspiracy or from the trial judge's denial of Gutter's motion for new trial. These assignments lack merit.
ASSIGNMENT OF ERROR NO. 8
By this assignment, Gutter contends that the trial court erred in denying his Motion for Mistrial brought after the State advanced the argument that the law presumes an individual to intend the natural and probable consequences of his acts. More particularly, the district attorney addressed the jury as follows:
"You've heard about the presumption of innocence. A presumption relieves him in whose favor it exists from the necessity of proof of the subject matter which covers the presumption. Because this defendant is presumed to be innocent, he does not have to prove his innocence. He is relieved of that responsibility, which means the State, through me, bears the burden of proving the crime charged. But there are many other presumptions in our law. For example, as a way of explanation, there is a presumption of sanity and responsibility for one's acts of conduct. That's why it is when a defendant is tried, the State does not have to prove that mentally he is competent and sane. You see, you can't try an insane man. So the presumption is of sanity. So the state doesn't have to deal with that question because it is presumed that this defendant and every other defendant is presumed to be sane. And it is also presumed that he intended the natural and probable consequences of his act." (Emphasis supplied) *703 On appeal, defendant argues that the effect of such instruction was to compel him to offer exculpatory proof to refute the inference of specific intent, thereby shifting the burden of persuasion, in violation of his due process rights. In support of his contention, defendant relies on the recent Supreme Court decision in Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).
Sandstrom is distinguishable however, in that instead of appearing as part of a district attorney's argument to the jury, the presumption was presented by the judge to the jury as part of the jury instructions. The Court in Sandstrom was concerned that the presumption could have the effect in a criminal prosecution of shifting the burden to the defendant to show that he lacked the requisite mental state for the crime. Such use of the presumption by the jury would alleviate the state's burden of proving, beyond a reasonable doubt, every fact necessary to constitute the crime charged, in violation of the constitution and of the mandate of In re Winship, 397 U.S. 357, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).
Here, unlike Sandstrom, there was little danger that a reasonable juror would credit the prosecution's argument in such a way to shift the burden of persuasion to the accused. The district attorney's reference to the forbidden presumption of La.R.S. 15:432 was followed by an immediate defense objection. Outside the jury's presence, a lengthy discussion was had in which the trial court eventually agreed with defense counsel that the prosecutor's remarks were improper under Sandstrom. The jury was then returned to the courtroom and admonished to disregard the prosecutor's remarks:
THE COURT: "Okay. Ladies and Gentlemen, before we proceed I would like to admonish you at this point to once again bear in mind things that I've told you on one or two occasions previously that the arguments of counsel, of course, both for the state and for the defense, are not evidence. They are intended to help you understand the contentions of the state and of the defendant. And to that extent, you may have heard counsel for the state refer to a presumption that the defendantLet me read the exact language here. The presumption that the defendant intends the ordinary consequences of his voluntary action. So at this point you are admonished to disregard that."
During his charge to the jury, the trial court also delivered a strong statement as to the presumption of an accused's innocence and the necessity that his guilt be established beyond a reasonable doubt.
Under these circumstances, it cannot be said that the trial court's admonition was not sufficient to protect the accused's right to a fair trial. La.C.Cr.P. Art. 771. This assignment lacks merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[*] Judges Guidry, Foret and Laborde of the Court of Appeal, Third Circuit, participated in this decision as associate justices ad hoc, joined by Chief Justice Dixon and Associate Justices Marcus, Blanche, and Lemmon.
[1] Louisiana Courts have found prima facie evidence of conspiracy where the defendant and another individual are shown to have been together both prior to and following the commission of an offense to which the accused has been circumstantially linked. State v. Kaufman, 331 So.2d 16 (La. 1976); State v. Clark, 387 So.2d 1124 (La. 1980).