451 So.2d 1175 (1984)
STATE of Louisiana
v.
Willie Ray HOLMES.
No. KA 83 1269.
Court of Appeal of Louisiana, First Circuit.
May 30, 1984.
*1176 Ossie Brown, Dist. Atty., Baton Rouge, for plaintiff-appellee.
*1177 Kathleen S. Richey, Baton Rouge, William J. Guste, Jr., Atty. Gen., New Orleans, for defendant-appellant.
Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
The defendant, Willie Ray Holmes, was charged by bill of information with aggravated burglary in violation of La.R.S. 14:60. He pled not guilty, waived his right to trial by jury, was tried by the district court judge and was found guilty as charged. The district court judge sentenced the defendant to serve twelve years at hard labor in the custody of the Louisiana Department of Corrections. Pursuant to La.R.S. 14:95.2, the defendant was sentenced to serve an additional consecutive term of two years at hard labor in the custody of the Louisiana Department of Corrections without benefit of parole, probation or suspension of sentence. This appeal followed.

SUFFICIENCY OF EVIDENCE
The defendant contends that the district court verdict of guilty is based on insufficient evidence to convict because there is no evidence to show he entered the dwelling armed with a dangerous weapon, he armed himself with a dangerous weapon after entering the dwelling or he knew the person sitting in the vehicle outside of the victim's dwelling had a gun. The defendant also contends he and the person sitting in the vehicle outside the victim's dwelling were not principals.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983); cf. State v. Captville, 448 So.2d 676 (La.1984).
A plea of not guilty places upon the State the burden of proving beyond a reasonable doubt each element of the crime with which the defendant is charged. La. R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 (La.1983) and 441 So.2d 747 (La.1983). The crime of aggravated burglary is defined in La.R.S. 14:60 for purposes of these proceedings as follows:
Aggravated burglary is the unauthorized entering of any inhabited dwelling ... with the intent to commit... any theft therein, if the offender,
(1) Is armed with a dangerous weapon; or
(2) After entering arms himself with a dangerous weapon; ...
Helen Taylor testified that at approximately 1:00 or 1:30 p.m. on June 8, 1981, she left her work at a medical clinic and was returning to her home located at 3070 Yorktown in the City of Baton Rouge, Parish of East Baton Rouge, Louisiana. Her children were in the car with her. As she drove into the driveway of her home, she observed a white car backed under her carport. She also observed that her bedroom door and a gate were open. Taylor had given permission to no one to enter her home. She parked in her driveway but sensing that something was unusual told her children to go across the street to a neighbor's home. She got out of her car and observed someone sitting in the driver's seat of the white car. She walked up to the car and an arm came out with a gun, and a voice said "you better run and you better run fast". Taylor started to run across her property to go to a neighbor's house across the street. She heard the person in the white car yelling. Willie Ray Holmes ran out of the front door of Taylor's house and almost ran into her. Taylor *1178 did not observe a weapon in Holmes' possession. She ran on to the neighbor's home. The white car drove to the front yard of her property, picked up Holmes and drove off. The neighbors called the police, and the police arrived in about ten minutes.
Taylor went back to her home and found the bedroom door kicked in and "kind of splintery". The clothes in the drawers were all pulled out. Both closet doors were open, and the contents were "messed up on the floor". In the entrance hall by the front door, two guns that had been in her husband's closet were on the floor along with a film projector. The house was not in this condition when she went to work. Taylor determined that a big portable color TV, a Buck knife with her husband's initials on it and some change were missing.
At about 4:00 p.m. on June 8, 1981, the police brought Taylor a photographic lineup. She identified Holmes in the lineup. About a week or ten days later, Taylor went to the parish prison and identified Holmes in a physical lineup. Taylor also made an in-court identification of Holmes.
Thomas Schiro, a detective with the Baton Rouge Police Department, went to Taylor's home after the incident was reported. He observed a door on the south side of the house kicked in and off of its frame. Schiro went inside and observed drawers and closets opened and things moved around. At the entrance to the living room leading to an exit door, he observed a shotgun and a projector. Taylor told Schiro that a knife and approximately $5.00 in change were missing. Nothing was recovered by the police.
The police had received an anonymous call that Willie Ray Holmes was doing burglaries in Taylor's neighborhood. Schiro made a photographic lineup with Holmes' picture in it and brought it to Taylor. Taylor identified Holmes in the photographic lineup. Later, a physical lineup was held, and Taylor identified Holmes in the physical lineup.
Willie Ray Holmes, Jr. testified he did not go to 3070 Yorktown on June 8, 1981, and did not participate in a burglary of those premises. Holmes testified he was at his mother's house on June 8, 1981, and was arrested after 4:00 p.m. Holmes could not remember where he was on June 6 or 7, 1981. He admitted convictions for accessory after the fact to armed robbery and for simple burglary in 1976 for which he got probation.
Holmes contends that he and the person in the white car with the gun were not principals to the aggravated burglary of Taylor's home. A principal is defined in La.R.S. 14:24 as follows:
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.
To be guilty as a principal to a burglary, the offender does not have to personally enter the burgled building. State v. Kimble, 375 So.2d 924 (La.1979). An essential goal of a burglary (in addition to the unauthorized entry) is a safe and undetected retreat (escape) from the burgled premises with the fruits of the crime. State v. Anthony, 427 So.2d 1155 (La.1983). A person who serves as a "lookout" and/or provides a means of escape by driving a "getaway" car is a principal to a burglary. Cf. State v. Gutter, 393 So.2d 700 (La.1981); State v. Witherspoon, 292 So.2d 499 (La. 1974).
The facts show that the person in the white car remained with the vehicle on the outside of Taylor's home to serve as a "lookout", pulled a gun on Taylor to warn her away from the scene of the crime, started yelling to warn Holmes in the burgled premises and provided Holmes a means of escape. These facts qualify the person in the white car as a principal to the burglary with Holmes.
La.R.S. 15:455 provides as follows:

Each coconspirator is deemed to assent to or to commend whatever is said or done in furtherance of the common *1179 enterprise, and it is therefore of no moment that such act was done or such declaration was made out of the presence of the conspirator sought to be bound thereby, or whether the conspirator doing such act or making such declaration be or be not on trial with his codefendant. But to have this effect a prima facie case of conspiracy must have been established. (Emphasis added).
In State v. Davis, 430 So.2d 680, 683 (La. App. 2nd Cir.1983), writ denied, 433 So.2d 1056 (La.1983) appears the following:
Criminal conspiracy is the agreement or combination of two or more persons for the specific purpose of committing any crime. La.R.S. 14:26.
Although a defendant may not be charged with the inchoate crime of conspiracy but only with a substantive offense such as armed robbery, reference to the law of conspiracy may be relevant for the State to take advantage of pertinent evidentiary rules. State v. Gutter, 393 So.2d 700 (La.1981).
Proof of a conspiracy may be made with either direct or circumstantial evidence. State v. Brown, 398 So.2d 1381 (La.1981).
A prima facie case of conspiracy is established when the State introduces evidence which, if unrebutted, would be sufficient to establish the fact of conspiracy. State v. McCoy, 395 So.2d 319 (La. 1980).
The facts set forth in the preceding paragraph show a conspiracy to commit burglary of Taylor's home between Holmes and the person in the white car.
Where possession or use of a dangerous weapon is essential to the commission of a substantive offense, a person may be a principal to the offense even though he did not personally have possession of the weapon used in the commission of the offense. State v. Dominick, 354 So.2d 1316 (La.1978). Thus, the use and possession of the gun by the person in the white car to warn Taylor away from the scene of the crime is imputable to Holmes as a principal and as a coconspirator. Holmes' intent to commit the crime can be inferred from the facts of the case. State v. Rogers, 428 So.2d 932 (La.App. 1st Cir.1983).
In La.R.S. 14:3, the legislature has admonished the courts to follow the following guidelines for interpreting articles of the Louisiana Criminal Code:
The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein; however, in order to promote justice and to effect the objects of the law, all of its provisions shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision. (Emphasis added).
The purpose of burglary laws is set forth in State v. Lozier, 375 So.2d 1333, 1337 (La.1979) as follows:
Burglary laws are not designed primarily to protect the inhabitant from unlawful trespass and/or the intended crime, but to forestall the germination of a situation dangerous to the personal safety of the occupants. People v. Lewis, 274 Cal.App.2d 912, 920, 79 Cal.Rptr. 650, 655 (1969). This concern is reflected in the Reporter's Comments to La.R.S. 14:60: `there may also be great danger to human life in the burglarization of vessels, trailers, and the like.' (emphasis provided)
In the archetypal burglary an occupant of a dwelling is startled by an intruder who may inflict serious harm on the occupant in his attempt to commit the crime or to escape from the house. The frightened occupant, not knowing whether the intruder is bent on murder, theft, or rape, may in panic or anger react violently, causing the burglar to retaliate with deadly force. People v. Lewis, 79 Cal.Rptr. at 655. (Underscoring added).
The pertinent language of La.R.S. 14:60 to be interpreted is as follows: "Aggravated burglary is the unauthorized entering of any inhabited dwelling ... with the intent to commit ... any theft therein, *1180 if the offender, (1) Is armed with a dangerous weapon; ...". In this case, there are two offenders, Holmes and the person in the car. The person in the car was armed with a dangerous weapon. The dangerous weapon was used to warn off Taylor who had intended to enter her dwelling. Does the language of the statute only proscribe an aggravated burglary if the principal who actually enters the dwelling is armed with a dangerous weapon when he enters? Or, may the offense be committed if a principal acting as "lookout" and/or "getaway" driver is armed with a dangerous weapon and is located immediately adjacent to the burgled dwelling? We do not perceive a distinction in the danger to the occupant of a dwelling when he confronts an armed burglar in the dwelling or confronts an armed burglar immediately adjacent to his dwelling. See Anthony, 427 So.2d at 1157. In either situation, the occupant might react violently in anger or panic causing the burglar to retaliate with deadly force.[1] Because one of the fundamental purposes of La.R.S. 14:60 is to protect against danger or harm to human life, we construe it to proscribe the offense of aggravated burglary where the "lookout" and/or "getaway" driver in the unauthorized entry of an inhabited dwelling is armed with a dangerous weapon and is immediately adjacent to the burgled premises.
Pursuant to the above interpretation, the evidence of record is sufficient to show that Holmes committed the offense of aggravated burglary.[2] This assignment of error is without merit.

EXCESSIVENESS OF SENTENCE
The defendant contends that the sentence imposed upon him is excessive.
A majority of the Louisiana Supreme Court has held that Article I, Section 20 of the Louisiana Constitution of 1974 prohibits the imposition by law of excessive punishment and that, although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762 (La.1979). The trial judge is given a wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by him should not be set aside as excessive in the absence of a manifest abuse of his discretion. State v. Prados, 404 So.2d 925 (La. 1981); State v. Douglas, 389 So.2d 1263 (La.1980); State v. Spencer, 374 So.2d 1195 (La.1979).
The authorized sentence for aggravated burglary is imprisonment at hard labor for not less than one nor more than thirty years. The sentence actually imposed is less than half of the statutory maximum. In sentencing the defendant, the district court judge observed that the instant case is his third felony conviction, he was addicted to narcotics, he had a total of six convictions and that the total damages to the victim was approximately $5,000. Because of the defendant's prior adult record, the manner in which the offense was committed and because the sentence actually imposed is in the lower range of the sentencing scale, we cannot say that the district court abused the much discretion accorded him by law.
Holmes contends that the sentence is in error by imposing the extra two year consecutive term pursuant to La.R.S. 14:95.2, because he did not use a firearm in the commission of the offense. La.R.S. 14:95.2, as applicable to this case, provides as follows:

*1181 Notwithstanding any other provisions of law to the contrary, any person who uses a firearm ... at the time he commits or attempts to commit the crime of... aggravated burglary, ... shall upon conviction serve a term of two years imprisonment for the first conviction.... The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.
The prison terms provided under the provisions of this Section, shall run consecutively to any other penalty imposed upon conviction of any of the crimes listed in this Section.
Although this statute is applicable to "any person who uses a firearm", it must be interpreted in pari materia with La.R.S. 14:24 and La.R.S. 15:455. The evidence shows that the person in the white car had a gun. Holmes is a principal and a coconspirator with that person. Although Holmes did not have the gun, he is legally responsible for the person that did and is subject to punishment under La.R.S. 14:95.2. Cf. State v. Brown, 438 So.2d 1202 (La.App. 3rd Cir.1983), writ denied, 443 So.2d 1125 (La.1984).

DECREE
For the foregoing reasons, the conviction and the sentence are affirmed.
AFFIRMED.
NOTES
[1] We distinguish these situations from those where the armed principal is not in or immediately adjacent to the burgled premises, such as, while planning the offense, securing the means to accomplish it or escaping. In the latter situations, the risk of a violent confrontation with the occupant of the dwelling is substantially diminished or nonexistent.
[2] We are unable to tell from the record if the carport (under which Taylor observed the white car) was a part of the inhabited dwelling. State v. Baggett, 292 So.2d 201 (La.1974).