462 So.2d 290 (1984)
STATE of Louisiana
v.
Melvin STERLING.
No. KA 84 0651.
Court of Appeal of Louisiana, First Circuit.
December 28, 1984.
Writ Denied April 1, 1985.
*292 Ossie Brown, Dist. Atty., by Jeff Hollingsworth, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
Paula Cobb, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The primary issues raised in this appeal are whether probable cause existed for defendant's arrest, whether the evidence presented was sufficient to prove defendant possessed specific intent to commit armed robbery and whether the sentence imposed upon defendant was excessive.
Defendant, Melvin Sterling, was indicted by the East Baton Rouge Parish grand jury for armed robbery in violation of La.R.S. 14:64. After entering a plea of not guilty, he filed a motion to suppress an inculpatory statement given by him. The trial court denied this motion. After trial by jury, defendant was found guilty as charged and sentenced to 25 years at hard labor, without benefit of parole, probation or suspension of sentence. Defendant appealed his conviction, relying upon four assignments of error.
One of defendant's assignments of error was the trial court's refusal to allow the introduction at the suppression hearing of the taped statement given to police by defendant's cousin, Deborah Sterling. In State v. Sterling, 444 So.2d 273 (La.App. 1st Cir.1983), we concluded this assignment of error (Number 4) had merit. Thus, we remanded this matter to the trial court with instructions to allow its introduction at a reopened hearing on defendant's motion to suppress. An additional reason for this remand was the ambivalent nature of the state's evidence on the issue of probable cause. Accordingly, the trial court was also instructed to allow the introduction of certain evidence on this issue. We retained jurisdiction over this appeal in the event of an adverse ruling on defendant's motion in order to complete our review of the other substantive issues raised by him, which have not previously been considered. Following a second hearing on March 20, 1984, the trial court again denied defendant's motion to suppress. This matter was subsequently transmitted to this court in accordance with our instructions.[1]
In his first assignment of error defendant argues the trial court erred in denying his motion to suppress an inculpatory statement given by him following his arrest.
The facts leading up to defendant's arrest and subsequent confession are as follows. On February 16, 1982, two young women were robbed and murdered at the Supermat Washateria in Baton Rouge, Louisiana. Both victims were shot to death. Patrick Doughty, a detective with the Baton Rouge City Police, and Eddie Stewart, an investigator for the district attorney's office, participated in the investigation of these crimes from its inception.
On August 16, 1982, Stewart received a telephone call from a confidential informant who stated there were three participants involved in the washateria robbery and murders. At that time he gave Stewart the name of one participant and the nicknames of the other two. The informant *293 later called Stewart back and named Melvin Sterling, Darren Kent and Keith Paul Whittaker as the three participants. The informant also indicated defendant's cousin and grandfather were aware of his involvement in these crimes. Stewart conveyed this information to Doughty and Frank Paxio, another detective with the Baton Rouge City police, who then attempted to find addresses on the named parties. They determined defendant was living at his grandfather's house.
Upon arriving at the grandfather's house between 3:00 and 4:00 P.M. on August 17, 1982, Doughty and Stewart encountered defendant's cousin, Deborah Sterling. Ms. Sterling refused a request to talk about the case downtown, but agreed to talk in their police car. The officers explained the meaning and consequences of being an accessory to Ms. Sterling. She was also informed of her rights and signed an advice of rights form. Thereafter, she was informed of the specific matter under investigation and asked what she knew about it. The substance of Ms. Sterling's statement was that she personally overheard defendant tell a third person he was present with two accomplices when the crimes in question were committed. According to Ms. Sterling, defendant stated he had not done the shooting. Ms. Sterling also indicated Whittaker and Kent were the two accomplices referred to by defendant.
At approximately 5:45 P.M. on August 17, 1982, Paxio and an investigator with the district attorney's office encountered defendant at his grandfather's house. They advised him of his Miranda rights and asked if he would go downtown with them. Upon agreeing to do so, defendant was taken to Doughty's office. Doughty advised defendant he was not under arrest, but the officers would like to talk to him about the robbery and murders if he was willing. After being informed of his rights at approximately 6:07 P.M., defendant gave an exculpatory statement. The officers discontinued the interrogation at this point and advised defendant not to leave the detective room until their return. Defendant remained in this office until after he had given a second statement, which was inculpatory in nature, at approximately 1:50 A.M. on August 18, 1982. It is this statement which defendant seeks to suppress.
During the intervening time between defendant's two statements, the officers apparently were attempting to locate Whittaker and Kent, both of whom were arrested that night pursuant to warrants. No warrant was ever obtained for defendant's arrest. Apparently, he was formally arrested and booked following his second statement.
In our earlier consideration of this matter, we determined the detainment of defendant following his first statement constituted an arrest. State v. Sterling, supra. Defendant contends this arrest was illegal because there was no probable cause to support it. He further argues his exculpatory statement was a product of this illegal arrest and thus must be suppressed.
A confession which is obtained as a direct result of an illegal arrest should be suppressed. State v. Burton, 416 So.2d 73 (La.1982). In order to be lawful, an arrest must be based upon probable cause to believe the person arrested has committed or is committing an offense. State v. Jackson, 424 So.2d 997 (La.1982). The state bears the burden of proving the police had probable cause to arrest or, if none existed, to show the causal connection between the arrest and subsequent confession was so attenuated the confession could not be properly considered a fruit of the illegal arrest. Id. Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief the person to be arrested has committed a crime. State v. Jackson, 450 So.2d 621 (La.1984). Probable cause must be judged by the probabilities and practical considerations of everyday life on which average men, and especially average policemen, can be expected to act. Id. Although mere suspicion will *294 not support an arrest, it is not necessary for the arresting officer to have sufficient proof to convict the accused. State v. Jackson, 424 So.2d 997 (La.1982).
In the present case, police received a tip from a confidential informant that defendant, together with Whittaker and Kent, were involved in the washateria robbery and murders. The informant also indicated defendant's grandfather and cousin were aware of his involvement. The United States Supreme Court has recently adopted a "totality of the circumstances" approach for evaluating information provided by a confidential informant to determine if probable cause exists. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), rehearing denied, ___ U.S. ___, 104 S.Ct. 33, 77 L.Ed.2d 1453 (1983). This approach requires a balanced assessment of the various indicia of reliability and unreliability attendant to the informant's tip. Id. The informant's veracity and basis of knowledge are important factors to be considered in this analysis.
Eddie Stewart, the recipient of the informant's tip, testified he had previously obtained a lot of information from this particular informant and it had never been incorrect in the past. Although he could not recall the number of convictions which had resulted from this information, he stated he had put this informant's information to the test at least ten times and it had always checked out. Stewart's testimony did not establish the informant's basis of knowledge. However, this deficiency alone is not depositive of the issue of probable cause. Gates, 103 S.Ct. at 2329. It is merely one of the factors to be considered under the totality of the circumstances analysis, albeit an important one.
Subsequent to receiving the tip and prior to defendant's arrest, the police obtained information which corroborated the tip in all important respects. On August 17, 1982, defendant's grandfather admitted he had heard from Deborah Sterling of defendant's involvement in a robbery or something of that nature. As indicated by the informant, Ms. Sterling was also aware of defendant's involvement in the crimes under investigation. Even more importantly, she confirmed the three names given by the informant, including defendant's, as being the perpetrators of the washateria robbery and murders. It is significant that the source of Ms. Sterling's knowledge was defendant himself.
One of the most important factors in determining probable cause is satisfied when the police know a crime has been committed. State v. Webb, 432 So.2d 362 (La.App. 1st Cir.1983). The arresting officers were well aware in the present case of the occurrence of an armed robbery and double murder. Considering this fact with all other relevant circumstances, including the informant's veracity as established by his previously reliable information, Ms. Sterling's corroboration of the names of the perpetrators (including defendant) and particularly Ms. Sterling's basis of knowledge, we find probable cause existed to support defendant's arrest.
This assignment of error is without merit.
In his second assignment of error, defendant contends the State failed to prove an essential element of armed robbery, i.e., specific intent to commit that crime.
The proper standard for reviewing sufficiency of the evidence, regardless of the procedural vehicle by which it is raised, is provided by La.Code Crim.P. art. 821. See State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). This standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. La.Code Crim.P. art. 821; State v. Walker, 447 So.2d 54 (La.App. 1st Cir. 1984).
Where possession or use of a dangerous weapon is essential to the commission of an offense, a person may be a principal to the offense even though he did not personally have possession of the weapon used in committing the offense. State v. Holmes, 451 So.2d 1175 (La.App. 1st *295 Cir.1984) writ denied, 456 So.2d 1008 (La. 1984). The State may prove a defendant's guilt as a principal by showing he aided, abetted, counseled or procured another to commit the crime. R.S. 14:24. All principals are not automatically guilty of the same grade of offense. State v. Holmes, 388 So.2d 722 (La.1980). Depending upon the mental element proven at trial, a principal may be convicted of a higher or lower degree of the crime. Id.
Due to the difficulty of presenting direct evidence as to a defendant's state of mind, the trier of fact may infer intent from the facts and circumstances of a transaction and the defendant's actions. R.S. 15:445. To possess specific intent an offender must actively desire the proscribed criminal consequences to follow his act or failure to act. R.S. 14:10(1). The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Sterling, 453 So.2d 625 (La.App. 1st Cir.1984).
Although a defendant can not be convicted on his own uncorroborated confession alone, once the occurrence of a crime is independently established, a defendant's confession alone may be used to identify him as a perpetrator of the crime. State v. Celestine, 452 So.2d 676 (La. 1984). Since the corpus delicti of armed robbery was established by independent evidence in the present case, defendant's confession may be considered with all other evidence in reviewing the sufficiency of the evidence to prove specific intent.
In his confession defendant gave the following account of the robbery. He admitted entering the washateria with Whittaker and Kent for the purpose of obtaining money from the victims. Once inside Kent pulled a gun on the two women present. Defendant then went behind the counter with Kent and maintained a lookout as Kent removed money from a small box. Whittaker took the car keys of one of the victims and went outside and started her car. Defendant then went outside and waited in the car for Kent and Whittaker. After the robbery, he spent the night at Whittaker's apartment and left the next morning with approximately $100.00 of the stolen money. Defendant denied hearing any gunshots. His trial testimony differed slightly from his confession in that he admitted at trial having heard two gunshots while waiting in the car.
Defendant admitted no one forced him to enter the washateria. However, he claims he believed money would be taken from the victims by scaring them without resorting to the use of guns. He maintains he changed his mind about the robbery once he saw Kent's gun.
We find there was sufficient evidence from which the jury could have concluded otherwise. Defendant willingly entered the washateria for the purpose of committing robbery. When Kent pulled a gun and threatened the victims, defendant made no attempt to dissuade him. Rather, he proceeded behind the counter with Kent and maintained a lookout as the money was being taken. A gun was being held on the two victims throughout this time. Following the robbery, defendant kept approximately $100 of the stolen money for himself. When viewed in the light most favorable to the prosecution, we find there was sufficient evidence from which the jury could reasonably have concluded defendant possessed specific intent to commit armed robbery.
This assignment of error is without merit.
In his third assignment of error, defendant contends the sentence imposed was excessive and the trial court failed to comply with the sentencing guidelines of La.Code Crim.P. art. 894.1. A trial judge has wide discretion in imposing a sentence within statutory limits. State v. Lanclos, 419 So.2d 475 (La.1982). A sentence will not be set aside as excessive in the absence of a manifest abuse of discretion. Id.
A sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. *296 State v. Thomas, 432 So.2d 325 (La. App. 1st Cir.1983).
Defendant was exposed to a maximum potential sentence under La.R.S. 14:64 of ninety-nine years at hard labor. He was actually sentenced to twenty-five years at hard labor.
The record reflects the trial court ordered a presentence report and contemplated each of the guidelines of La.Code Crim.P. art. 894.1 before imposing sentence. Although defendant is young and this conviction was his first as an adult, he has an extensive juvenile record. In fact, the instant offense was committed within several months of his last release from LTI. In addition, the trial court felt a lesser sentence would deprecate the seriousness of the robbery in which defendant was involved, which resulted in the brutal murder of two young women.
We do not find the sentence imposed excessive under these circumstances. Additionally, we find the trial court fully considered the range of sentencing alternatives and individualized the sentence imposed to defendant for the crime involved.
This assignment of error is without merit.
For the above reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] We are now concerned only with assignments of error numbers 1-3. Assignment of error number 4 was disposed of in our earlier consideration of this matter.