# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 19-620


**STATE OF LOUISIANA**

**VERSUS**

**CORDAY TREVEIL TAYLOR**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 268,018
HONORABLE LOWELL C. HAZEL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Phyllis M. Keaty, and D. Kent Savoie, Judges.


**SECOND DEGREE MURDER CONVICTION AND SENTENCE AFFIRMED; AGGRAVATED BURGLARY CONVICTION AND SENTENCE VACATED.**

**J. Phillip Terrell, Jr.**
**District Attorney**
**Ninth Judicial District**
**Catherine L. Davidson**
**Assistant District Attorney**
**Post Office Box 7538**
**Alexandria, Louisiana 71306-7358**
**(318) 473-6650**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Corday Treveil Taylor**

**SAVOIE, Judge.**

In January 2003, a Rapides Parish grand jury charged Defendant Corday Treveil Taylor and two co-defendants with second degree murder, a violation of La.R.S. 14:30.1; the State reiterated the charge in an amended bill of information in May 2004. In March 2005, the State charged Defendant with conspiracy to commit second degree murder, in violation of La.R.S. 14:26 and La.R.S. 14:30.1 and conspiracy to commit armed robbery, in violation of La.R.S. 14:26 and La.R.S. 14:64.3. In September 2005, the State issued a final bill that re-stated the three aforementioned charges, as well as aggravated burglary, a violation of La.R.S. 14:60. The co-defendants entered into plea agreements.

On September 13, 2005, the court conducted a bench trial, as Defendant indicated he wanted to proceed without a jury. The court heard evidence through September 16, then recessed. On September 29, the court heard closing arguments and found Defendant guilty of second degree murder. On December 5, the court found Defendant guilty of aggravated burglary and not guilty on both of the conspiracy charges. The court sentenced Defendant on December 15, ordering him to serve life in prison for second degree murder and thirty years for aggravated burglary.

The most recent district court judge to preside over this case recounted the following procedural history:

> Procedurally, this matter really began, um, June 29, 2018. The Judge's Office had received a letter from Mrs. Taylor, Mr. Taylor's wife, asking what had happened from their remand hearing that was sent from the Third Circuit probably ten years ago. From there, on -- the procedure really starts at December 16th, 2002. Mr. Taylor along with two other defendants were arrested for the, for first degree murder. On January 30th of 2003, Bill of Information was filed charging Mr. Taylor with first degree murder, and Mr. Taylor was arraigned February the 7th 2003. The matter was set for a jury trial for

May 5th of 2003. At that time, we had a different prosecutor. Mr. Wilson has since now retired. Now, Ms. Ratliff is on – assigned to this case. Between May 5th, 2003 from the time of trial which is September 13th, 2005, motions were heard and continuances were granted. Additionally – pardon me. Additionally, the defendant waived his right to trial by jury, and the matter proceeded at [*sic*] trial by Judge on September 13, 2005. Judge Davidson heard the trial. After a three day trial, the Court found Mr. Taylor guilty of second degree murder, not guilty of conspiracy to commit second degree murder, not guilty of conspiracy to commit armed robbery and guilty of aggravated burglary. December 15th of 2005, Mr. Taylor was sentenced to life for second degree murder and thirty years on aggravated burglary. On February the 21st of 2006, a motion for appeal was filed. The Court granted the motion on the next day, on February the 22nd of 2006.

On August the 16th of 2006, Motion for a New Trial was filed by Mr. Kutch and the motion alleged new evidence primarily that Mr. Kutch was informed that Mr. George McCormick, who was a physician and was the pathologist, and he was the coroner for Caddo Parish for many years – um, there was testimony that he might have not actually performed the autopsy. That motion was heard, and it was denied by the Court on August the 17th, 2006. Sometime after this motion, a new trial was, was denied. Um, a Motion for Remand was filed by the Appellate Project to the Third Circuit. And just for a side note, there were cases, um, other cases that Dr. McCormick had been involved in, and basically the Appellate Project had filed for remands on all of these to make it uniform. The Motion for Remand made the same allegations, uh, regarding Dr. McCormick. Third Circuit granted the motion and remanded the case for, for hearing regarding motion for a New Trial.

What follows is that there were two orders from the Third Circuit. The first order came on August the 21st of 2006 and the Third Circuit granted remand, remand, [sic] stayed briefing schedules until Motion for New Trial heard; ordered the Court to send to the Third Circuit copy of the ruling within ten days and denied defendant right to return to Third Circuit to amend this Motion for Appeal to include adverse ruling on his new trial motion. However, a second order which supercedes [sic] the first order was issued on September the 6th – excuse me – September the 6th of 2006 where the Court remanded it, this case back to the trial court, denied all other relief stated in the first order and that no order to rule on the Motion for New Trial was set with any, with any time delays. So from there I don't know – actually I think I may be the third or fourth Judge on this matter and, as a result, um, we can't gleam [sic] from the record exactly what has transpired but there was just simply a, a sticky note on the second order just saying that hearing must get set and check periodically. We don't know who's [sic] handwriting it is and, um, so that's the – that

2

was the second order and the prevailing order. That's the last entry into the Mr. Kaylor, Taylor's case and, um, so once I came on the bench in December, I was informed that this was a case that would be on the docket for Division B, Section One. So, uh, the Court had set a status conference – was on January the 11th of 2019 and, um, at that time, Mr. Mosley was here representing the State. Ms. Ratliff was here, along with her client in open court representing Mr. Taylor, and, um, I believe that Mr. Taylor's family was present that day as well.

So at that time that was an opportunity for, um., Ms. Ratliff to again have a conversation and, and on this issue with, with Mr. Taylor and for us all to kind of try to sift the, sift the case to see kind of where we were, and how we were gonna proceed and then, obviously we set the new trial motion for today which is February the 12th, of 2019.

The court held the long-awaited hearing on the motion for new trial on February 12. After hearing argument, the court denied the motion.

Defendant now appeals, assigning five errors. Based on the following reasons, we affirm Defendant's murder conviction and sentence, but vacate the aggravated burglary conviction and sentence.

## FACTS

In the early morning hours of December 15, 2002, Defendant drove two accomplices to an area near the home of the victim, Jimmy Ray. Wearing masks and carrying guns, the two accomplices broke into Ray's home. The victim awoke and produced a handgun but dropped it. The victim ran out of the house and the burglars followed. The victim attempted to circle back to the house, and the other two men shot him to death. The burglars returned to the vehicle, and Defendant drove them away from the area.[1]

---

[1] As noted in the district court's recitation of this case's history, action on this court's 2006 remand orders and thus the appeal, has been long-delayed. The State concedes Defendant's right to proceed with the present appeal.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is an error patent concerning the legality of Defendant's sentence for aggravated burglary; however, the error is rendered moot by our decision to vacate Defendant's conviction and sentence for aggravated burglary.

## ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, Defendant argues the evidence adduced at trial did not support his murder conviction. Specifically, he argues that the State failed to prove he was a principal to aggravated burglary and, thus, to second degree murder via the felony-murder doctrine. Alternatively, he argues that the aggravated burglary was completed before the murder took place.

He notes the general test for sufficiency claims, which is well-established:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (citing *State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

The court convicted Defendant as a principal to aggravated burglary; since his accomplices killed the victim in the course of the burglary, the court convicted

him of second degree murder via the felony-murder doctrine. The law of principals is stated in La.R.S. 14:24: "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." A getaway driver or lookout is a principal to a burglary. *State v. LaGarde*, 513 So.2d 396 (La.App. 4 Cir. 1987); *State v. Holmes*, 451 So.2d 1175 (La.App. 1 Cir. 1984).

> Regarding the felony-murder rule, the supreme court has explained it as:
>
> [A] general principle of accessorial liability [is] that when two or more persons embark on a concerted course of action, each person becomes responsible for not only his own acts but also for the acts of the other, including " 'deviations from the common plan which are the foreseeable consequences of carrying out the plan.' " *State v. Smith*, 98-2078, p. 7 (La.10/29/99), 748 So.2d 1139, 1143 (quoting 2 Wayne R. LaFave and Austin Scott, *Substantive Criminal Law*, § 7.5, p. 212 (1986)). The rule has particular application in cases of felony murder. Thus, a simple burglary may turn into an aggravated burglary and then escalate further into a second degree felony murder well beyond the original plan of the defendant or his accomplice who then unexpectedly kills during commission of the underlying felony offense. *See, e.g., State v. McFarland*, 07-0026, p. 10 (La.App. 5th Cir.5/29/07), 960 So.2d 1142, 1148 (affirming conviction for second degree felony murder in the course of an aggravated burglary because "the fact that the defendant claimed he did not know [the co-perpetrator] was armed does not absolve him from responsibility, as the risk that the unauthorized entry of an inhabited dwelling may escalate into violence and death is a foreseeable consequence of burglary which every party to the offense must accept no matter what he or she actually intended.")(citing *Smith*, 98-2078 at 7, 748 So.2d at 1143).

*State v. Smith*, 07-2028, pp. 8-9 (La. 10/20/09), 23 So.3d 291, 296-97.

On appeal, Defendant argues that he was not a principal to either of the felonies at issue. After giving a summary of the testimony, Defendant argues that the evidence did not demonstrate that he had the requisite intent to be a principal. However, Defendant acknowledges that his accomplices killed the victim and that

5

he drove the getaway vehicle to a parking lot near the scene. He notes that his statement to police, the statement of accomplice Craig Bailey, the testimony of accomplice Sherrod Wilson, and Wilson's prior statements varied on a number of points.

The salient point is what Defendant knew about the offense the other two apparently had planned. Wilson testified that Defendant knew a "lick" was set up and that a "lick" could be anything from a robbery to a gang fight. However, in context, it is highly unlikely that either Wilson or Defendant thought they were going to a fight. According to Wilson, Defendant drove the trio on a quick reconnaissance of the victim's residence. They went around the block, and Defendant stopped in a parking lot. He stayed in the vehicle while the other two men left wearing masks and carrying guns. In his statement, Defendant claimed he thought they were going to retrieve a stolen dog. In Bailey's statement, the initial intentions of Defendant and Wilson are not clear, but it appears that some sort of unauthorized entry into victim's home was intended. Defendant did not testify; however, in a statement to police, he said he thought the other two men wanted to retrieve a stolen dog.

As Defendant observes, he and the other two men recounted divergent versions of the relevant events. As *Kennerson* shows, credibility is a matter for the factfinder. "The trier of fact is free to accept or reject, in whole or in part, any witness's testimony." *State v. Flowers*, 16-130, p. 7 (La.App. 1 Cir. 9/19/16), 204 So.3d 271, 277, *writ denied*, 16-1871 (La. 9/6/17), 224 So.3d 983. Ultimately, a fact-finder's credibility assessment will not be overturned in the absence of manifest error. *State v. James*, 99-1858 (La.App. 3 Cir. 5/3/00), 761 So.2d 125, *writ denied*, 00-1595 (La. 3/23/01), 787 So.2d 1010. The judge in this case was

within his discretion to discount Defendant's statement that he was helping retrieve a stolen dog and credit information from Wilson and Bailey that indicated a crime was afoot. Wilson testified that he and Bailey donned masks and black clothing while they were in the vehicle with Defendant, that Defendant knew a "lick" had been set up, and that a "lick" meant they were going after some money or drugs. The proceeds were to be split three ways. Bailey's statement indicated that Defendant was actively involved but was otherwise unclear since Bailey's version was apparently meant to minimize his role in the offense. This evidence was sufficient to support a determination that Defendant intentionally participated in the aggravated burglary as the driver and thus a principal. Since the burglary resulted in a murder, he was likewise guilty as a principal to felony-murder.

Defendant also argues that the burglary and murder were chronologically separate, and, therefore, the burglary could not form a basis for felony murder.

Wilson described the events leading up to the murder as follows:

Jimmie Ray recognized Craig Bailey's voice, and he told Craig Bailey, he say, don't do this to me, we like brothers. So now, I'm really confused because now I realize that he knows this guy, that he's for to [sic] rob or whatever, you know. So, Jimmy Ray and Craig they start tussling, and Jimmie Ray he drops, he drops the gun. So after he drops the gun, he break and run out the house, that's when I pick[ed] up the gun. And we go and follow behind 'im. So, as we follow behind 'im, I fired two shots, one's coming out the driveway, with the 40-caliber. And then I fire another shot when I enter the street. So, after we don't see 'im, we turn to leave, coming back the same way that we enter, on side'a (phonetic) the carport. So, as we turned to leave, I hear something coming behind, so I turn[ed] around and I say, Craig, he's coming back. So, when I say, Craig he['s] coming back, that's when Craig Bailey turn around and he shoot. He shoot a shot. Now, I don't know, but I'm thinking he hit the guy, Jimmie Ray, in the leg, because Jimmie Ray fell and he crawled behind the van. Now as he's crawling behind the van, that's when Craig Bailey, me and Craig Bailey walked behind the van. So as the guy was crawling, Craig Bailey commence to fire, so he's steady shootin'. Now I fired some shots. Really not knowing what Craig Bailey's gonna do if I

don't fire, you know, because he's steady shootin'. So he walk up on the guy and he shoot some more and said his gun's empty.

Q.    What happened after that?

A.    After that, after that we leave, you know. We didn't even enter back into the house. We leave after that.

Bailey also related a version of the offense in his statement:

BY BAILEY:  I, when I realized it was a pistol involved, that's when Sherrod ran out the room and told me, he['s] got a pistol. And when I seen him running of the room, I had already took off running.

BY GREEN:  Okay[.]

BY GREEN:  And when I took off running, I, I come out that side door, here right on the side, and I cleared that fence, jumped it.

BY GREEN:  So you went to the back of the house.

BY BAILEY:  Yes sir,  I'm not just saying the back, but I know it was on that side part, and I . . . cause I jumped the, the fence, said like I ain't . . . I just jumped it, boom.

BY GREEN:  Okay.  Back into that field?

BY BAILEY:  Yes sir.

BY GREEN:  Jump the fence, you was in the field at the back of the house.

BY BAILEY:  Yes sir, and I, I jumped that, that next fence, it had, ah, (interrupted)

BY GREEN:  Where did Sherrod go?

BY BAILEY:  . . . a field right there, and that's when Sherrod was following me at one point, and that's when Sherrod say, man, fuck that, I'm fixin' to go back. I'm fixin' to kill this nigger. He gotta come on wit' it, or somethin' like that. So that's when Sherrod went back, and by the time he went back, I went to, not to his backyard, but to the yard next to his yard, to the fence. And that's when I seen the dude comin' outta his house, and once he was coming outta . . . I didn't see 'im comin' outta his house, but I seen 'im going to the driver door of that van.

BY GREEN:  Umm hmm.

8

BY BAILEY:  And when he was going to the driver door of that van, Sherrod come back from around the house, and that's when a shot was fired.  After a shot was fired, 'nother shot was fired, and that's when I see the dude go from a stumble from there.  And once the shots was fired, I seen the dude go from a stumble, I left, Officer Green, I, I mean I took of running, and I left.  And so that's when . . . after you heard that shot fired and stuff, it calm for about, I say maybe five seconds, and then that's when you heard a commotion outside, just bloom, bloom, bloom, bloom, bloom [sic]. Then for (interrupted)

BY GREEN:  And where you was at when you heard that?

BY BAILEY:  When I heard that, I was out the field headed towards the truck, get, getting' in the truck with Corday, tellin' him, askin' him, where he was, an' and why he ain't, he wun't over there.

We find that the relevant events occurred as one continuous series of actions; thus, the aggravated burglary is a factually connected underlying offense. Bailey testified that Wilson killed the victim to silence him.  Wilson blamed the actual killing on Bailey and testified that the victim recognized Bailey's voice. Bailey told the victim that he "shouldn't have called my name."  Viewed as a killing to prevent future testimony, the burglary and the murder were certainly connected; thus, the murder conviction stands.

For the reasons discussed, the assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, Defendant argues that the trial court erred by denying his motions for new trial.  Rulings on such motions are reviewed for abuse of discretion. *State v. Daigle*, 07-928 (La.App. 3 Cir. 1/30/08), 974 So.2d 869.  Defendant presents little argument in brief, noting that on December 5, 2005, the district court heard his first motion for new trial, in which he presented the testimony of a witness who indicated that Defendant was intoxicated on the date of the offense.  The court ruled that the testimony did not change its ruling, especially in light of Defendant's statement to police.  As discussed in the prior assignment,

Defendant told investigators that he was helping to recover a stolen dog; he did not allege intoxication. This argument presented the court with another credibility determination, which was within the district court's discretion.

The other motion for new trial is the one that was not heard for approximately thirteen years. In the original motion, Defendant argued that the State's medical expert, Dr. George McCormick, may not have performed the autopsy on the victim and, thus, may have committed perjury at Defendant's trial. As noted earlier, the district court eventually heard this motion on February 12, 2019. Significantly, Defendant presented no evidence at the hearing; at the end of its argument for relief, the defense simply argued "the likelihood of Dr. McCormick's perjury."

For its part, the State acknowledged that there was some general doubt regarding the doctor's actions regarding autopsies in his career, but there was no definitive new information regarding his actions in the present case. The State also argued that the medical evidence was not pivotal to its case against Defendant. We find that, in the absence of evidence to support the underlying argument that Dr. McCormick did not perform the autopsy in this case, it would have been wholly inappropriate for the district court to grant the motion for new trial. Therefore, this assignment lacks merit.

### ASSIGNMENT OF ERROR NUMBER THREE

In his third assignment of error, Defendant argues that the convictions for both felony-murder and the underlying offense violate the constitutional protection against double jeopardy.

Recently, the Louisiana Supreme Court denounced the "same evidence" test for double jeopardy, leaving the "additional fact" test found in *Blockburger v.*

*United States*, 284 U.S. 299, 52 S.Ct 180 (1932), as the sole standard for the double jeopardy analysis. However, the supreme court's analysis shows that the prohibition against double jeopardy in a felony-murder situation remains extant:

> In [*State ex rel.*] *Wikberg* [*v. Henderson*, 292 So.2d 505, 508-09 (1974)] the majority, despite stating that the *Blockburger* test is not much different than the test traditionally used in Louisiana, *see Wikberg*, 292 So.2d at 508-09, engaged in a broader analysis to find that convicting a defendant for attempted armed robbery following a conviction for felony-murder arising out of the same incident violated the prohibition against double jeopardy. The majority based its conclusion on the belief that the enumerated felony underlying a felony-murder charge operates much like a lesser responsive charge while not technically amounting to such:
>
>> Of course, an essential element of the state's proof of felony-murder is the commission or attempted perpetration of the enumerated felony. The enumerated felony is therefore a different grade of the same offense (or an included offense) for double jeopardy purposes. *See* C.Cr.P. Art. 596.
>>
>> In most cases, the lesser grade or included offense is generically the same as the more severe crime charge, e.g., armed robbery and theft. In the case of felony-murder and felony-manslaughter, however, generically different offenses such as armed robbery and murder are combined into a single offense through a legal fiction, which fiction relieves the state of proving intent to kill or inflict great bodily harm. This difference may account for some of the confusion in the jurisprudence dealing with felony-murder and double jeopardy.
>
> *Wikberg*, 292 So.2d at 509. The majority noted that the legislature enacted Article 596 without the "responsiveness" requirement of former Article 279 of the 1928 Code of Criminal Procedure and thereby "broadened" the protection of the article, which view may have inspired the statement in [*State v.*] *Steele*[, 387 So.2d 1175 (La.1980)] that Louisiana law is "somewhat broader" than *Blockburger. See Wikberg*, 292 So.2d at 510. Chief Justice Sanders' dissent in *Wikberg* clearly perceived the majority as utilizing a broader test than used previously in Louisiana or federal courts. *See Wikberg*, 292 So.2d at 513-14. Regardless, the U.S. Supreme Court subsequently found in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (citations omitted) that "[w]hen . . . conviction of a greater crime, [felony murder], cannot be had without conviction of the lesser crime, [in this case] robbery with firearms, the

Double Jeopardy Clause bars prosecution for the lesser crime, after conviction of the greater one." Therefore, *Harris* healed the brief schism between federal and Louisiana double jeopardy jurisprudence. The concept that Louisiana must utilize a second, broader double jeopardy analysis, however, took root well beyond the context of Article 596 and felony murder in which it arose.

*State v. Frank*, 16-1160, pp. 9-10 (La. 10/18/17), 234 So.3d 27, 33.

Pursuant to the language in *Frank*, specifically its reference to the ruling in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912 (1977), the double jeopardy prohibition bars the present conviction for both aggravated burglary and second-degree murder. When double jeopardy is found, the proper remedy is to vacate the conviction and sentence for the lesser-punishable offense. *State v. Price*, 39,582 (La.App. 2 Cir. 03/23/05), 899 So.2d 633. Consequently, Defendant's conviction and sentence for aggravated burglary is vacated.

## ASSIGNMENT OF ERROR NUMBER FOUR:

In his fourth assignment of error, Defendant argues that his sentences are excessive. In light of our conclusion that the burglary conviction and sentence are vacated, any discussion of the burglary sentence is moot.

Regarding his mandatory life sentence for murder, Defendant argues that, while his role in the crime was minor, he is the only member of the trio of accomplices who is serving a life sentence. The information provided by accomplices Wilson and Bailey showed that they were both present at the killing and Defendant was not. Also, the evidence does not show that Defendant had any advance knowledge that the victim would be killed. Nonetheless, we note the following language from the second circuit:

> In these assignments, the defendant asserts that the sentence imposed by the trial court, although mandatory, is excessive, and cruel and unusual punishment. Defendant argues that it is not fair in this case, where he was convicted as a principal and received a life

sentence without benefit of parole, probation, or suspension of sentence, while the person who actually shot the victims was allowed to plead guilty to a lesser offense and received a sentence of seven years at hard labor.

The penalty for second degree murder is life imprisonment at hard labor, without benefit of parole, probation, or suspension of sentence. LSA-R.S. 14.30.1. The Louisiana Supreme Court has consistently held that a mandatory sentence of life imprisonment for second degree murder does not constitute cruel and unusual punishment. *State v. Landry*, 388 So.2d 699 (La.1980), *cert. denied*, 450 U.S. 968, 101 S.Ct. 1487, 67 L.Ed.2d 618 (1981); *State v. Daniel*, 378 So.2d 1361 (La.1979); *State v. Graham*, 422 So.2d 123 (La.1982), *appeal dismissed*, 461 U.S. 950, 103 S.Ct. 2419, 77 L.Ed.2d 1309 (1983).

Further, the supreme court has stated:

> There is no injustice in punishing one of two guilty principals when the jury has possibly miscarried justice by acquitting the other guilty principal on the basis of mistake, compromise, lenity or nullification. At most, there is only the illusory appearance of injustice which is nothing more than intellectual discomfort with an imperfect system of criminal justice.

*State v. Irvine*, 535 So.2d 365, 369 (La.1989).

These assignments lack merit.

*State v. Harper*, 27,278, pp. 17-18 (La.App. 2 Cir. 8/23/95), 660 So.2d 537, 547-48, *writ denied*, 95-2318 (La. 1/12/96), 666 So.2d 320. Similar reasoning applies in the present case; the accomplices' sentences have no bearing on the term that Defendant received. Thus, this assignment lacks merit.

## ASSIGNMENT OF ERROR NUMBER FIVE

In his fifth and final assignment of error, Defendant argues that his constitutional right to a speedy trial was violated by the thirteen-year delay in his proceeding, as discussed previously. He requests discharge from incarceration. Defendant cites *State v. Davis*, 10-697 (La.App. 1 Cir. 11/1/10), an unpublished case from the first circuit which examined a delay between a court-martial and an

13

appeal by applying *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182 (1972). In another case, the supreme court has explained: "That test consists of four factors: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right to a speedy trial, and (4) the prejudice to the defendant." *State v. Mathews*, 13-525, p. 2 (La. 11/15/13), 129 So.3d 1217, 1218. Without reference to *Wingo*, the State acknowledges that the delay was lengthy but argues that any prejudice to Defendant was cured when the second motion for new trial was finally heard.

While the delay at issue is undeniably lengthy, Defendant was not ultimately prejudiced by it. He is serving a mandatory life sentence, and the motion for new trial, discussed earlier, lacked merit. Thus, Defendant is not entitled to be discharged from incarceration. This assignment lacks merit.

## DECREE

Defendant's conviction and sentence for second degree murder are affirmed; however, his conviction and sentence for aggravated burglary are vacated due to double jeopardy.

**SECOND DEGREE MURDER CONVICTION AND SENTENCE AFFIRMED; AGGRAVATED BURGLARY CONVICTION AND SENTENCE VACATED.**