**STATE of Louisiana**

v.

**Robert Cardell FLOWERS**

**NUMBER 2016 KA 0130**

Court of Appeal of Louisiana,
First Circuit.

September 19, 2016

Warren L. Montgomery, D.A., Matthew Caplan, A.D.A., Covington, LA, Attorneys for Appellee, State of Louisiana

Ravi Shah, Paul J. Barker, New Orleans, LA, Attorneys for Appellant, Defendant—Robert Cardell Flowers

BEFORE: WELCH, CRAIN, AND HOLDRIDGE, JJ.

WELCH, J.

|₂The defendant, Robert Cardell Flowers, was charged by grand jury indictment with two counts of aggravated rape, violations of La. R.S. 14:42A(4) (counts one and two) and three counts of sexual battery (victim under the age of thirteen), violations of La. R.S. 14:43.1 (counts three, four, and five). He entered pleas of not guilty to all charges and filed a motion to suppress his confession, which was denied. Following a jury trial, the defendant was unanimously found guilty as charged on all five counts. He filed motions for new trial and postverdict judgment of acquittal, both of which were denied. On counts one and two, on each count, the defendant was sentenced to terms of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. On counts three, four, and five, on each count, the defendant was sentenced to imprisonment for forty years at hard labor, with twenty-five years to be served without benefit of probation or parole. The district court ordered that the sentences run concurrently. The defendant moved to reconsider the sentence, which the district court denied. He now appeals, alleging five assignments of error. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

On April 24, 2013, the victim, J.R.,[1] reported to her teacher that her mother,

---

1. The victim and immediate family members will be referenced by their initials only. See

S.G., and the defendant (her mother's boyfriend) had been sexually abusing her since she was five years old. The victim's teacher reported the information to the school principal, who contacted the St. Tammany Parish Sheriff's Office and the Department of Children and Family Services. Detective Hugh Davis reported to the victim's school and met with the victim's mother. The following day, the detective received a telephone call from the defendant wherein the defendant asked if he could come into the sheriff's office to speak with the detective. After ⌊₃speaking with the detective and being advised of his **Miranda**[2] rights, the defendant admitted to the sexual abuse of the victim beginning at the time that she was five years old. He was subsequently arrested, along with the victim's mother.

## SUFFICIENCY

■ In cases where a defendant has raised issues on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should preliminarily determine the sufficiency of the evidence before discussing the other issues raised on appeal. When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must review the assignments of error to determine whether the accused is entitled to a new trial. **State v. Hearold,** 603 So.2d 731, 734 (La.1992). Accordingly, we will first address the defendant's second assignment of error, which challenges the sufficiency of the State's evidence and the district court's denial of his motion for postverdict judgment of acquittal. According to the defendant, the only evidence offered to establish that the victim had been the subject of sexual abuse was her own testimony and the "coerced, non-voluntary statement" of the defendant. The defendant claims that had his statement not been admissible at trial, the only remaining evidence would have been the "self-serving testimony" of the victim, which he argues was "called into serious doubt." He further argues that the medical examiner found no signs that the victim was sexually abused. The defendant also points out that although the victim testified that the defendant and her mother video-recorded their encounters, no videos were found on the defendant's cellular telephone.

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. Amend. XIV; La. Const. Art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, ⌊₄viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. **Jackson v. Virginia,** 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); see La. C.Cr.P. art. 821B; **State v. Ordodi,** 2006–0207 (La. 11/29/06), 946 So.2d 654, 660, **State v. Mussall,** 523 So.2d 1305, 1308–09 (La. 1988). The **Jackson** standard of review, incorporated into La. C.Cr.P. art. 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. See **State v. Patorno,** 2001–2585 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.

La. R.S. 46:1844W.

2. **Miranda v. Arizona,** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

During the applicable time period regarding the allegations against the defendant, 2005 through 2012, La. R.S. 14:42 (prior to amendment by 2015 La. Acts, Nos. 184, § 1 and 256, § 1) provided, in pertinent part:

A. Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:

* * *

(4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

Pursuant to La. R.S. 14:43.1 (prior to amendment by 2015 La. Acts No. 256, § 1), sexual battery is the "intentional touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender, or the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the victim, when any of the following occur:"

(1) The offender acts without the consent of the victim.

(2) The act is consensual but the other person, who is not the spouse of the offender, has not yet attained fifteen years of age and is at least three years younger than the offender.

The victim testified at trial. According to her testimony, the defendant began touching her breasts and private areas when she was five or six years old. When she was seven or eight years old, the defendant attempted vaginal intercourse with her while her mother touched her private areas. By the time the victim was eight or nine years old, the defendant forced her to have vaginal intercourse with him and "squirted" "white stuff" on her back. The victim was forced to touch the private areas of the defendant. She testified that the abuse occurred two or three times per week and continued until her mother and the defendant ended their relationship, with the exception of one incident. The victim described the incident that occurred after her mother and the defendant ended their relationship. According to the victim, while she was standing at her school bus stop, the defendant drove by and asked if she wanted money. He gave her money and told her to get into his car. The defendant then drove the victim to the home he lived in with his new girlfriend and "put his private part inside of [her]."

The victim explained that she was scared to report the abuse to her teachers because she was afraid that the defendant and her mother would hit her or fuss at her. She testified that she finally made the disclosure to her teacher because her father was coming into town and she "was trying to figure out a way to tell him" and wanted to discuss it with her teacher.

The victim participated in an interview with the St. Tammany Parish Children's Advocacy Center. During the interview, the victim explained that the abuse began when she was five years old and consisted of her mother and the defendant touching her in private areas, sometimes at the same time. She explained that the defendant used his hand and his penis to touch her, sometimes on top of her clothes and sometimes underneath. The victim detailed the last time that both her mother and the defendant engaged in sexual activity with her. According to the victim, the three entered her mother's bedroom where she was told to remove her clothing. The defendant and the victim's mother began touching the victim, and the defendant vaginally and orally raped the victim. The victim was forced to touch her mother's

private areas and kiss her mother and the defendant on their mouths.

The defendant also testified at trial. According to his testimony, he began living with the victim's mother in 2007, when the victim was seven years old. By 2011, the victim's mother began to "change," had mood swings, lost weight, and abused Adderall and Lortabs. When their relationship ended, the defendant was awarded shared custody of C.F., his daughter with the victim's mother. After the victim made her disclosure at school, deputies and DCFS workers reported to the house where the defendant was living, and after speaking with the defendant, took custody of C.F. According to the defendant, he was informed by the case worker that C.F. was being taken because of something said at the victim's school. The defendant turned his cellular telephone over to the deputies that night. The deputy on the scene told the defendant that he could contact Detective Hughes for more information.

The defendant met with the detective the next day and claimed that the detective asked him to help "sink" the victim's mother. The defendant further claimed that the detective told him that he needed to cooperate if he did not want to spend the rest of his life in jail, and if he made a statement, C.F. would be returned to his family. In his recorded statement, the defendant explained that when the victim was nine or ten years old, her mother forced the defendant into a bedroom where the victim was lying naked underneath the bed covers. According to the defendant's statement, the victim's mother touched victim's private area and unsuccessfully attempted to insert the defendant's penis into the victim's vagina. By the time the victim was ten years old, the defendant was able to have vaginal intercourse with her, but was "semi-conscious" because he had been drinking. The defendant stated that once he realized he was with the victim, he stopped. The defendant admitted that the vaginal intercourse happened two to three times after the first time, but he was unable to remember details. He claimed that the intercourse stopped when he left to work offshore in 2011.

At trial, the defendant denied sexually abusing the victim and denied witnessing the victim's mother molest the victim. In response to the victim's testimony regarding their encounter at the bus stop, the defendant explained that he was on his way to get his mail when he noticed the victim missed her bus. He drove the victim to the house where he lived with his new girlfriend, fed her breakfast, and brought her to school.

The jury heard all of the testimony and chose to believe the victim's version of the acts that occurred. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. **State v. Higgins**, 2003–1980 (La. 4/1/05), 898 So.2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005). The trier of fact is free to accept or reject, in whole or in part, any witness's testimony. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the witnesses' credibility, the matter is one of the weight of the evidence, not its sufficiency. **State v. Taylor**, 97–2261 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. *Id.* We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See **State v. Mitchell**, 99–

3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the ⌊₆testimony accepted by a trier of fact does not render the accepted evidence insufficient. **State v. Quinn,** 479 So.2d 592, 596 (La.App. 1st Cir.1985).

▬ When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. **State v. Captville,** 448 So.2d 676, 680–81 (La. 1984). The jury's guilty verdicts here reflect the reasonable conclusion that, based on the testimony, the defendant committed aggravated rape and sexual battery on the victim over the course of several years. In finding the defendant guilty, the jury clearly rejected his theory of innocence. Although the defendant complains that there was no evidence corroborating the victim's testimony, the testimony of the victim alone is sufficient to prove the elements of the offense. See **State v. Orgeron,** 512 So.2d 467, 469–70 (La.App. 1st Cir.1987), writ denied, 519 So.2d 113 (La. 1988); **State v. Rives,** 407 So.2d 1195, 1197 (La. 1981). After a thorough review of the record, we find that the evidence supports the jury's unanimous verdicts. We are convinced that, viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the aggravated rape and sexual battery of the victim. See **State v. Calloway,** 2007–2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*); **State v. Mire,** 2014–2295 (La. 1/27/16), —— So.3d ——, ——, 2016 WL 314814 (*per curiam*). This assignment of error is without merit.

## MOTION TO SUPPRESS

In his first assignment of error, the defendant argues that the district court erred in denying his motion to suppress his statement. Specifically, the defendant contends that his confession was coerced through threats and promises made by Detective Davis that he would lose C.F. and spend the rest of his life in jail if he ⌊₉did not cooperate. The defendant also complains that only eight minutes of a three-and-one-half-hour interview were recorded. According to the defendant, he was denied his rights under La. R.S. 15:450 because a portion of the interview was not recorded and "the several hours that Detective Davis spent in the room alone with [the defendant] both before and after the audio-recorded statement could, and likely would, offer some explanation as to what led to [the defendant] making the statement."

A hearing was held on the defendant's motion to suppress his confession. At the conclusion of the hearing, the district court denied the motion and stated that based on the testimony it heard and the documents admitted into evidence, the defendant's statement was not unconstitutional.

▬ It is well settled that for a confession or inculpatory statement to be admissible, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; La. C.Cr.P. art. 703D. Further, if the statement was elicited during custodial interrogation, the State must show that the defendant was advised of his **Miranda** rights. Whether a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The district court must consider the totality of the circumstances in deciding whether a confession is

admissible. Moreover, where conflicting testimony is offered, credibility determinations lie within the sound discretion of the district court judge, and his ruling will not be disturbed unless clearly contrary to the evidence. Unless the evidence does not support its findings, an appellate court will defer to the district court's determination as to whether a confession was made knowingly, intelligently, and voluntarily. **State v. Williams**, 2001–0944 (La.App. 1 Cir. 12/28/01), 804 So.2d 932, 944, writ denied, 2002–0399 (La. 2/14/03), 836 So.2d 135. The direct testimony of the interviewing police officer can be sufficient to prove a defendant's statement was freely and voluntarily given. See **State v. Sims**, 310 So.2d 587, 589–90 (La. 1975); **State v. Washington**, 540 So.2d 502, 507–08 (La. App. 1st Cir.1989).

When a district court denies a motion to suppress, factual and credibility determinations should not be reversed in the absence of a clear abuse of the district court's discretion, *i.e.*, unless such ruling is not adequately supported by reliable evidence. See **State v. Green**, 94–0887 (La. 5/22/95), 655 So.2d 272, 280–81. However, a district court's legal findings are subject to a *de novo* standard of review. See **State v. Hunt**, 2009–1589 (La. 12/1/09), 25 So.3d 746, 751.

If the defendant alleges police misconduct in eliciting a confession, it is incumbent upon the State to rebut these allegations specifically. **State v. Welch**, 448 So.2d 705, 712 (La.App. 1st Cir.), writ denied, 450 So.2d 952 (La. 1984). In determining whether the ruling on the defendant's motion to suppress was correct, we are not limited to the evidence adduced at the hearing on the motion. We may consider all pertinent evidence given at the trial of the case. **State v. Chopin**, 372 So.2d 1222, 1223 n. 2 (La. 1979).

The defendant contends that his confession was not freely given because the detective threatened him and made promises to him that he would lose C.F. and spend the rest of his life in jail if he did not cooperate. At the hearing on the motion to suppress, he claimed that he initially told the detective that he was not involved in any sexual abuse of the victim, but changed his story when the detective told him that he would lose C.F. if he did not cooperate. The defendant testified that after he gave his recorded statement, DCFS came to the sheriff's office with C.F., and he informed them that he wanted C.F. to reside with his aunt. The defendant admitted that the detective did not tell him that C.F. would be returned to him if he gave a statement, but rather, he would go to jail regardless.

Detective Davis testified that the defendant contacted him in order to get information about why C.F. was removed from his custody and initially denied any involvement in the sexual abuse of the victim, but ultimately signed a waiver of rights form and decided to record a statement. Although the defendant claims that the detective provided him with the information given in this confession, the detective testified that he did not have specific information about the crime when he interviewed the defendant and only had general information obtained from the victim when he talked with her at her school. Detective Davis denied making promises, threats, or coercing the defendant to obtain his confession. The detective also denied telling the defendant that if he made a statement, C.F. would be placed with family rather than in foster care. According to the detective, he told the defendant that if the victim's mother kept custody of C.F., she would be able to do the same thing to C.F. with the next man she dated or married.

**280**

■ Based on the foregoing, we find that the defendant was not intimidated, threatened, or induced to confess based on fear that C.F. would remain in DCFS custody. Any comments to the defendant by Detective Davis that he could help C.F. by cooperating were not promises or inducements designed to extract a confession. See **State v. Petterway,** 403 So.2d 1157, 1160 (La. 1981); **State v. Dison,** 396 So.2d 1254, 1258 (La. 1981). Further, a confession is not rendered inadmissible because officers "exhort or adjure" an accused to tell the truth, provided the exhortation is not accompanied by an inducement in the nature of a threat or which implies a promise of reward. **State v. Robertson,** 97–0177 (La. 3/4/98), 712 So.2d 8, 31, cert. denied, 525 U.S. 882, 119 S.Ct. 190, 142 L.Ed.2d 155 (1998); see also **State v. Peters,** 546 So.2d 829, 832 (La.App. 1st Cir.), writ denied, 552 So.2d 378 (La. 1989).

Accordingly, the defendant's claim that he was promised the release of his daughter from DCFS custody in exchange for his confession is unsupported by the testimonial evidence. The State rebutted the defendant's allegation, and the district court, in denying the motion to suppress the statement, impliedly found that the testimony of Detective Davis was more credible than the testimony of the defendant and that no promises were made. See **State v. Batiste,** 2006–0824 (La.App. 5th Cir. 3/13/07), 956 So.2d 626, 634, writ denied, 2007–0892 (La. 1/25/08), 973 So.2d 751. The record before us clearly establishes that the defendant was advised of his **Miranda** rights prior to making a confession; that at no time while in police custody did the defendant ask for a lawyer or invoke his right to remain silent; and that the defendant's confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises.

■ Moreover, the defendant's confession was properly admitted in compliance with La. R.S. 15:450. See **State v. Alexander,** 339 So.2d 818, 822–823 (La. 1976). Louisiana Revised Statutes 15:450 requires that "[e]very confession … sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." Despite the fact that not all of the defendant's conversation with Detective Davis was taped, the entire tape recording of the confession was played before the jury at the defendant's trial, and the detective explained what was discussed during the remainder of the conversation. According to the detective, prior to the recorded statement, he talked to the defendant about the charges and explained what was alleged.

Accordingly, the district court did not err or abuse its discretion in denying the defendant's motion to suppress.

## MOTIONS FOR MISTRIAL AND MOTION FOR NEW TRIAL

In related assignments of error, the defendant argues that the district court erred in denying both of his motions for mistrial as well as his motion for new trial. First, in his third assignment of error, the defendant claims that the district court erred in denying his motions for mistrial based on (1) the State's "improper and dishonest line of questioning" to Detective Davis in reference to his cellular telephone, and (2) the State's line of questioning regarding the defendant's prior misdemeanor conviction. Next, in his fourth assignment of error, the defendant argues that his motion for new trial should have been granted on the same basis.

### Testimony regarding cellular telephone

During direct examination of Detective Davis, he testified that the defendant's cellular telephone was taken from him when he was arrested, but the officers did not have the phone's passcode. On cross-examination, the detective clarified that the cellular telephone was turned over the prior day when C.F. was removed from the defendant's custody. Defense counsel asked whether the contents of the cellular telephone were downloaded, and the detective responded that he did not think so because he did not have the defendant's passcode. On redirect examination, the following colloquy occurred:

> [The State]: Now, let's talk about this couldn't download the phone. Why?
>
> [Detective Davis]: At the time, our equipment wouldn't download because it required the combination. And if we couldn't get the combination, then we couldn't download any information.
>
> [The State]: Why couldn't you get the combination?
>
> [Detective Davis]: [The defendant] refused.
>
> [The State]: After that, it was impossible to get anything because the phone—
>
> [Defense counsel]: Objection, Your Honor. Can we approach?

The parties approached the bench, and defense counsel moved for mistrial arguing that the prosecutor "knows damn well that they got into that phone." According to the defense counsel, the State turned over the phone records in discovery. The State responded that it was told that it did not have the records. Defense counsel indicated that he wanted a "corrective instruction." The jury was removed from the courtroom, and the State indicated that it was advised that there was a download of the photographs from the phone, but the download did not "show anything." De-fense counsel informed the court that contrary to the detective's testimony, there was a 2,791 page report generated from the defendant's cellular telephone, including an extraction report listing the phone's passcode. The defense also reiterated that the State agreed not to use the cellular telephone at trial.

The court denied the motion for mistrial, noting that it did not think it was a necessity and stated that it could admonish the jury or allow defense counsel to recross-examine the detective on that issue. Defense counsel asked about the nature of the potential admonishment and noted that he was "good with the admonishment." The jury was returned to the courtroom, and the district court stated:

> Ladies and Gentlemen of [t]he [j]ury, the Defense stated an objection on the record and that is why we sent you out where I could have them take a look and see.
>
> A question was posed to this witness on redirect regarding the cell phone and whether or not the Defendant gave him the code for the cell phone and whether or not they were unable to download the cell phone.
>
> While you were out, the Defense provided information showing that in fact the code was provided for the cell phone and the cell phone was downloaded.
>
> Just to make sure that everyone is correct on that, the information provided was erroneous, the question was erroneous.
>
> I told you in my opening comments to you, on occasion, I have to admonish people and this is one of those occasions where I'm admonishing the prosecution regarding that and making sure that the record is clear, because we want you to base any decision you make on accurate evidence as presented. All right.

In his brief, the defendant argues that the detective's "lie was heard by the jury, and the prejudicial effect that the statement had on [the defendant's] right to a fair trial was substantial." Specifically, he contends that the State "prejudiced [the defendant's] credibility prior to him ever taking the witness stand by conjuring up an untrue factual scenario that put the defendant in the light of a person who obstructed justice" and "[d]espite the court's admonishment to the jury, there is no way to be certain that the jury believed that the subject matter should not have been brought up due to rules of evidence, or whether the jury truly understood that they had been misled and lied to by the prosecutor and the detective."

### Testimony regarding prior misdemeanor

On direct examination, the defendant testified that he had a "2007; a misdemeanor, possession of marijuana charge" and was sentenced to six months for that offense. Then, on cross-examination, the State asked, "You don't want to get convicted, do you?" The defendant responded:

[The defendant]: In 2007, I took—in 2007, I got caught with possession of weed charges. I pled guilty to that.

[The State]: And you got a break on that. You got a reduced charge on that?

[Defense counsel]: Objection. Move for mistrial.

[The defendant]: I'll take my—

[The court]: Wait. Stop.

[The State]: That's what you pled guilty to?

[The court]: Wait. Please excuse [t]he [j]ury.

The jury was excused, counsel approached the bench, and the following colloquy occurred:

[The State]: He's explaining that he is not pleading to this because he's not getting a break on it and he did get a

break on the other thing and that's the only reason he—

[The court]: Okay. What break? [W]hat was he charged with, originally?

[The State]: Possession with intent to distribute.

[Defense counsel]: Judge, it doesn't matter. He's only allowed to bring up convictions.

* * *

[The State]: Unless he starts defending the conviction. In this case, he's defending the conviction and he's acting like he's pleading guilty as charged when he's not pleading guilty as charged.

The district court ruled:

Technically, his conviction is irrelevant because it was a misdemeanor; right?

You asked him, to begin with, if he has ever been convicted of any crime and he said he was convicted of possession of marijuana. Fine.

I'm not going to grant the mistrial. I'm going to advise [t]he [j]ury to disregard that last question and we're going to move on from there. Okay.

And if you want to make an objection of asked and answered the next 15 times he asks him why she would lie, I will sustain that objection. Okay?

[Defense Counsel]: Yes, Your Honor.

The court then addressed the jury:

I need to instruct you to disregard the last question that was asked by [t]he [p]rosecution.

You are not to consider that, or any answer, that might have come forth before we sent you out.

So you disregard it and it's not to be considered, in any way, in any deliberation that you would have later on.

In his brief, the defendant complains that the State "impermissibly went into

details suggesting to the jury that [the defendant's] conviction was somehow unjust and not severe enough for the crime committed, despite that conviction having been prosecuted by his office."[3] He argues that the State posed the question in order to cause jurors to "erroneously conclude that [the defendant] was in fact a drug dealer or a common criminal." According to the defendant, the court's admonishment "did not right the wrong" because the jury could not "un-hear" the prosecutor's questions or the defendant's response.

The defendant filed a motion for new trial based on the denial of his motions for mistrial and motion to suppress. He requested that a new trial be granted pursuant to Article 851(B) Subsections (1), (2), and (5). The defendant argued that the State and Detective Davis "intentionally [misled] the jury in their questioning and answers" when the detective stated that the defendant refused to give him his cellular telephone's passcode. He further argued that the State "impermissibly questioned the defendant as to a prior misdemeanor conviction by suggesting to the jury that the defendant was a drug dealer who was given a break."

In ruling on the motion for new trial, the court stated:

> As to the motion for new trial, I've also reviewed that. I paid particular attention to your assignment of errors.
>
> I've already made my ruling on the motion to suppress and I'd still stand by

that ruling even after having listened to the testimony at trial.

> As to the two motions for mistrial, I think as it pertains to the questioning relative to the cell phone, that [defense counsel] did a fine job of cross examining that witness and pointing out to [t]he [j]ury that there was a misstatement made.
>
> They could weigh that evidence and make a determination as to how much weight they would give that and I'm confident that they did so.
>
> As pertains to your third area of concern in your motion for mistrial, I admonished [the State] in front of [t]he [j]ury and told them that they were to disregard that and I am confident that they did so.
>
> And so, having considered all these, the motion for a new trial is hereby denied.

Pursuant to La. C.Cr.P. art. 851 A, "[t]he motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." The court, on the defendant's motion, shall grant a new trial whenever any of the following occur:

(1) The verdict is contrary to the law and the evidence.

(2) The court's ruling on a written motion, or an objection made during the proceedings, shows prejudicial error.

\* \* \*

---

**3.** Under La. C.E. art. 609.1C, "[o]rdinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury."

(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.

La. C.Cr.P. art. 851(B).

 The district court's decision to grant or deny a motion for new trial will not be disturbed absent a clear abuse of discretion. **State v. Maize**, 94–0736 (La. App. 1 Cir. 5/5/95), 655 So.2d 500, 517, writ denied, 95–1894 (La. 12/15/95), 664 So.2d 451.

A mistrial is a drastic remedy which is warranted only if substantial prejudice results that would deprive the defendant of a fair trial, and the ruling of the district court will not be disturbed absent an abuse of discretion. **Welch**, 448 So.2d at 710. The district court judge is given discretion to determine whether a fair trial is impossible, or if an admonition is adequate to assure a fair trial. **State v. Belgard**, 410 So.2d 720, 724 (La. 1982).

Louisiana Code of Criminal Procedure article 771 provides:

In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:

(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770; or

(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

 A mistrial under the provisions of Article 771 is at the discretion of the district court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. **State v. Tran**, 98–2812 (La.App. 1 Cir. 11/5/99), 743 So.2d 1275, 1280, writ denied, 99–3380 (La. 5/26/00), 762 So.2d 1101. The proper remedy for inappropriate remarks by a witness is an admonishment directing the jury to disregard the remark. The district court should order a mistrial under Article 771 only if it determines that an admonition is not adequate to assure the defendant a fair trial. See La. C.Cr.P. art. 771.

 The district court's denial of the motions for mistrial was a proper exercise of its discretion. While the testimony elicited from the detective regarding the cellular telephone was incorrect, the court informed the jury that both the question and the detective's answer were "erroneous." It further apprised the jury of the true facts by informing it that the defense had provided information that the passcode was provided for the cellular telephone and that the contents of the telephone were downloaded. Moreover, the record indicates that defense counsel acquiesced in the admonition regarding the cellular telephone, as he requested a "corrective instruction" and stated that he was "good with the admonishment" after the court stated the contents of its proposed admonition. Similarly, the district court's admonition to the jury to disregard the question regarding the defendant's misdemeanor offense cured prejudice, if any, to

the defendant. The court instructed the jury to disregard the question and not to consider the question or any answer "in any way." The defendant did not object to the district court's decision to admonish the jury and did not enter an objection following the admonishment. The failure to raise a contemporaneous objection to a ruling of the court constitutes a waiver of that objection. La. C.Cr.P. art. 841; **State v. Calvert,** 2007–1910 (La.App. 1 Cir. 6/6/08), 986 So.3d 255, writ denied, 2008–1602 (La. 4/17/09), 6 So.3d 784. Furthermore, during jury instructions, the district court warned the jury that it "may not consider evidence which [it was] instructed to disregard or to which an objection was sustained." Hence, there was no abuse of discretion by the district court in refusing to grant the motions for mistrial and the motion for new trial.

These assignments of error are without merit.

## EXCESSIVE SENTENCES

In his last assignment of error, the defendant argues that the district court imposed excessive sentences. Specifically, he contends that although a term of life imprisonment is statutorily mandated, it is "unconstitutionally excessive" and amounts to cruel and unusual punishment because he "never took a life" and "has no prior felony criminal record."

 Article I, Section 20 of the Louisiana Constitution prohibits the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate a defendant's constitutional right against excessive punishment and is subject to appellate review. **State v. Sepulvado,** 367 So.2d 762, 767 (La. 1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm caused to society, it is so disproportionate as to shock one's sense of justice. **State v. Reed,** 409 So.2d 266, 267 (La. 1982).

The defendant was sentenced to terms of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence on each count of aggravated rape. For his three sexual battery convictions, on each count, the defendant was sentenced to imprisonment for forty years at hard labor, with twenty-five years to be served without benefit of probation or parole. The district court ordered that the sentences run concurrently.

Under La. R.S. 14:42(D)(1), a person convicted of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Under La. R.S. 14:43.1(C)(2), whoever commits the crime of sexual battery on a victim under the age of thirteen when the offender is seventeen years of age or older shall be imprisoned at hard labor for not less than twenty-five years nor more than ninety-nine years.[4] At least twenty-five years of the sentence imposed shall be served without the benefit of parole, probation, or suspension of sentence.

 Courts are charged with applying statutorily mandated punishment unless it is unconstitutional. **State v. Dorthey,** 623 So.2d 1276, 1278 (La. 1993). Indeed, it is incumbent on the defendant to rebut the presumption that a mandatory

---

4. The mandatory maximum sentence was changed from a term of life imprisonment to a term of ninety-nine years pursuant to 2008 La. Acts, No. 33, § 1.

minimum sentence is constitutional by "clearly and convincingly" showing that:

> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

**State v. Johnson,** 97–1906 (La. 3/4/98), 709 So.2d 672, 676 (citation omitted); **State v. Henderson,** 99–1945 (La.App. 1 Cir. 6/23/00), 762 So.2d 747, 760 n. 5, writ denied, 2000–2223 (La. 6/15/01), 793 So.2d 1235.

After the sentences were imposed, defense counsel moved for reconsideration arguing that the defendant was a first-felony offender and that the aggravated rape statute was unconstitutional in that it mandated a life sentence|₂₂upon the defendant "when he did not take a life himself." The district court denied the motion, noting that La. R.S. 14:42 "says what it says" and it was "bound by the law . . . and that's what [it was] doing."

 The defendant did not prove by clear and convincing evidence that he was exceptional such that the mandatory life sentence was not meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. See **Johnson,** 709 So.2d at 676. Accordingly, there was no reason for the district court to deviate from the provisions of La. R.S. 14:42(D)(1) in sentencing him. The defendant sexually abused the young victim on a regular basis for several years, beginning when she was five years old and ending only after he moved out of the victim's mother's residence. The sentences imposed are not grossly disproportionate to the severity of the offenses and, therefore, are not unconstitutionally excessive.

This assignment of error is without merit.

### REVIEW FOR ERROR

In his third assignment of error, the defendant requests that this Court examine the record for error under La. C.Cr.P. art. 920(2). This Court routinely reviews the record for such errors, regardless of whether such a request is made by a defendant. Under La. C.Cr.P. art. 920(2), we are limited in our review to errors discoverable by a mere inspection of the pleadings and proceedings without inspection of the evidence. After a careful review of the record in these proceedings, we have found no reversible errors. See **State v. Price,** 2005–2514 (La.App. 1 Cir. 12/28/06), 952 So.2d 112, 123–25 (*en banc*), writ denied, 2007–0130 (La. 2/22/08), 976 So.2d 1277.

For the foregoing reasons, the defendant's conviction and sentence are affirmed.

**CONVICTIONS AND SENTENCES AFFIRMED.**

J. Crain concurs and assigns reasons

CRAIN, J., concurring.

|₁I believe the state's limited questioning about the manner in which the defendant was previously convicted of the crime was proper, and did not require filtering through the discretionary mistrial analysis under Article 771. On cross-examination, the defendant volunteered that he "got caught with possession of weed charges. I pled guilty to that." The prosecutor replied, "And you got a break on that. You got a reduced charge on that?" That question prompted the motion for mistrial, which was denied, but the trial court offered an admonition, which counsel accepted without objection. The majority opinion concludes that the jury admonition cured any prejudice to the defendant, and the

failure to object to the admonition was a waiver of that objection.

The question posed by the prosecutor was not an inappropriate comment under Article 771. The defendant's statement that he "pled guilty" was unsolicited. By commenting beyond the fact of the conviction and referring to the **type** of conviction, a reasonable juror could have concluded that the defendant would have pled guilty in this case, if he was guilty. To counter that inference, the state was justified in establishing that the guilty plea was the result of a deal, a plea bargain that led to a reduced charge. The probative value of that limited detail about the prior conviction outweighed the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* La. Code Crim. Pro. art. 609.1C(3). I believe the motion for mistrial should have been denied, without an admonition, because the question was proper.