Judgment rendered May 10, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,010-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

DEMARIOUS HICKS                             Appellant

* * * * *

Appealed from the
Sixth Judicial District Court for the
Parish of Madison, Louisiana
Trial Court No. 185,577

Honorable Laurie Reis Brister, Judge

* * * * *

LOUISIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

JAMES EDWARD PAXTON                  Counsel for Appellee
District Attorney

ANITA TENNANT MACK
EDWIN MOBERLEY
BRADLEY T. SLOANE
Assistant District Attorneys

* * * * *

Before COX, THOMPSON, and HUNTER, JJ.

HUNTER, J., concurring and assigning additional reasons.

**COX, J.**

This criminal appeal arises from the Sixth Judicial District Court of Madison Parish, Louisiana. The defendant, Demarious Hicks ("Hicks") was convicted by a jury of the second degree murder of Rodrick Bowman ("Bowman") and the attempted second degree murder of Trashaun Smith ("Smith"). Hicks was sentenced to, life imprisonment at hard labor for the death of Bowman, and 50 years at hard labor for the attempted murder of Smith. Both sentences were to be served consecutively without benefit of parole, probation, or suspension of sentence. For the following reasons, we vacate Hicks' convictions and sentences and remand the matter for a new trial.

**FACTS**

On August 9, 2017, Madison Parish police officers were dispatched to the Madison and Wyche Apartments in Tallulah, Louisiana, in response to a shooting. Evidence at trial established that when officers arrived at the apartment complexes, they discovered that two men, Bowman and Smith, had been shot by a single bullet. Officers learned that Bowman sustained a fatal gunshot wound in the back of his head and that the same bullet passed through Bowman and struck Smith in the chest. Smith was later transported to a hospital in Mississippi with life-threatening injuries. Following a series of interviews with potential witnesses, officers arrested Hicks on August 10, 2017.

On October 18, 2017, the State filed a bill of indictment, charging Hicks with the second degree murder of Bowman and attempted second degree murder of Smith, and a grand jury returned a true bill as to both counts. The following day, Hicks was arraigned and entered a plea of not

guilty on both counts. Following a litany of pretrial motions, a jury trial commenced on November 15, 2021.

After closing arguments and jury instructions, Hicks was found guilty as charged. Neither the State nor defense counsel requested the jury be polled. On January 13, 2022, Hicks filed a motion for new trial and post-verdict judgment of acquittal, arguing insufficiency of evidence; namely, that the credibility of certain witnesses cast doubt as to Hicks' guilt. Both motions were denied prior to sentencing and defense counsel waived all sentencing delays. At sentencing, the trial court noted that Hicks made several derogatory remarks after the verdict was rendered, following the victim impact statement, and consistently made remarks after the trial court recited its consideration of the 894.1(b) factors. Thereafter, the trial court sentenced Hicks to life imprisonment at hard labor for the death of Bowman, and 50 years at hard labor for the attempted murder of Smith. Both sentences were to be served consecutively without benefit of parole, probation, or suspension of sentence.

Hicks now appeals his conviction and sentence.

## DISCUSSION

As a precursor to his five assignments of error, Hicks argues that the trial court erred in instructing the jury that 10 of the 12 jurors were needed to reach a verdict and that his conviction should be set aside and remanded for a new trial. In citing *Ramos v. Louisiana*, 590 U.S. - - - -, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020), Hicks notes that because his trial occurred in November 2021, after *Ramos*, *supra* was rendered, a unanimous jury verdict was required to convict him. We agree.

2

In *Ramos*, *supra*, the United States Supreme Court expressly held that the right to a jury trial under the Sixth Amendment to the U.S. Constitution, incorporated against the states by way of the Fourteenth Amendment to the U.S. Constitution, requires a unanimous verdict to convict a defendant of a serious offense in both federal and state courts. The Court concluded:

> Wherever we might look to determine what the term "trial by an impartial jury trial" meant at the time of the Sixth Amendment's adoption–whether it's the common law, state practices in the founding era, or opinions and treatises written soon afterward–the answer is unmistakable. A jury must reach a unanimous verdict in order to convict.

*Ramos*, *supra*, at 1395.

The Louisiana Supreme Court subsequently concluded that a less than unanimous jury verdict on a matter of direct appeal is error patent. *State v. Richardson*, 20-00175 (La. 6/3/20), 296 So. 3d 1050, *citing Griffith v. Kentucky*, 479 U.S. 314, at 328, 107 S. Ct. 708, at 716, 93 L.Ed.2d 649 (1987).

Although the offense in the present matter occurred in 2017, *trial* did not commence until November 2021, at which time, *Ramos*, *supra*, had long since been rendered and positioned as the governing precedent over verdicts in jury trials. Therefore, the State's assertion that La. C. Cr. P. art. 782 is applicable, is without merit. Furthermore, Hicks argues that the trial court erred in instructing the jury that only 10 jurors were needed to reach a verdict. In citing *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), in which the Louisiana Supreme Court held that an erroneous jury instruction as to reasonable doubt was considered a structural error, Hicks similarly contends that the jury instruction in this case was a

structural error that warrants his convictions and sentences to be vacated and remanded for a new trial.

In *State v. Langley*, 06-1041 (La. 5/22/07), 958 So. 2d 1160, 1164, *cert. denied*, 552 U.S. 1007, 128 S.Ct. 493, 169 L.Ed. 2d 368 (2007), the Louisiana Supreme Court recognized a distinction between "trial errors," which may be reviewed for harmless error, and "structural errors," which are not subject to harmless error analysis. Structural errors deprive a defendant of basic protections without which a criminal trial cannot reliably serve its function to determine guilt or innocence. *State v. Chapman*, 54,590 (La. App. 2 Cir. 11/16/22), 351 So. 3d 876. However, structural defects occur in only "a very limited class of cases," which include: (1) the total deprivation of the right to counsel; (2) a biased trial judge; (3) unlawful exclusion of grand jurors of defendant's race; (4) denial of self-representation at trial; (5) denial of a public trial; and (6) a defective reasonable doubt instruction. *Langley*, *supra*.

This issue is not one of first impression, as courts have previously addressed structural errors as it relates to an error in jury instructions concerning unanimous jury verdicts. For example, in *State v. Anthony*, 17-372 (La. App. 5 Cir. 12/30/20), 309 So. 3d 912, *writ denied*, 21-176 (La. 10/12/21), 325 So. 3d 1067, the defendant argued, in part, that he was entitled to a new trial because the jurors were instructed that only 10 members were required to reach a verdict; the defendant asserted that the nonunanimous jury instruction constituted a structural error in the same way that Louisiana's unconstitutional jury instruction regarding the State's burden of proof constituted a structural error. The Fifth Circuit held that the jury instruction was not a structural error because it was not one of the

4

limited classes of errors as defined in *Langley*, *supra*, the instruction was in accordance with the law at the time of trial, and the record reflected that the defendant was *unanimously* convicted on all counts.

Similarly, in *State v. Williams*, 20-46 (La. App. 5 Cir. 12/30/20), 308 So. 3d 791, in which the defendant asserted that the jury instructions for a consensus of 10 jurors was a structural error, the Fifth Circuit noted again that the error in instruction did not fall within any of the six enumerated classes of cases and the defendant's trial occurred *prior* to *Ramos*, *supra*, such that the jurors were instructed in accordance with the law at the time of trial. Moreover, the court found that the verdict was unaffected by the error as the record reflected that the defendant was convicted unanimously.

In *State v. Primeaux*, 19-841 (La. App. 3 Cir. 10/21/20), 305 So. 3d 1014, in which the defendant relied on *Sullivan*, *supra*, to assert that a jury instruction requiring a concurrence of ten to reach a verdict was a structural error, the Third Circuit ultimately concluded that an error in jury instructions that a nonunanimous verdict sufficed was harmless where a unanimous verdict was returned. Finally, in *State v. Dosher*, 20-574 (La. App. 3 Cir. 10/27/21), 329 So. 3d 914, the Third Circuit distinguished a jury instruction that a concurrence of ten was needed to reach a verdict from the erroneous jury instruction addressed in *Sullivan*, *supra*. The court provided:

> In *Sullivan*, the trial court gave an incorrect jury instruction on the definition of reasonable doubt. The Supreme Court ultimately found that such an erroneous instruction made it impossible for the jury to reach a valid verdict and that any review of the ruling would be pure speculation. Further, the jury instruction given in *Sullivan* was an incorrect statement of law as it was understood at the time, whereas the jury instruction Defendant complains of in the instant case was a correct statement of the law at the time.

5

The court noted that the defendant's trial occurred prior to *Ramos*, *supra*, such that the jury instruction was a correct statement of the law as of the date of the trial and the jury returned a unanimous verdict.

Although we find that Hicks' nonunanimous jury instruction does not fall within the limited class of enumerated cases for structural errors as set forth in *Langley*, *supra*, we cannot say, like the decisions in the aforementioned cases, that the error was harmless as Hicks' case is wholly distinguishable. First, unlike *Anthony*, *supra*, *Williams*, *supra*, *Primreaux*, *supra*, and *Dosher*, *supra*, the trial court in the present case did not provide a correct recitation of the law as of the date of trial. As to unanimity, the jury was instructed on at least two separate occasions, by the trial court and the defense attorney, that only ten were required to reach a verdict. Specifically, the trial court instructed the jury as follows:[1]

> The law requires that at least 10 of you must agree on the same verdict before you can arrive at a verdict. Before you retire, the Court will hand you a form for each count charged, which each contain a responsive verdict that I have just mentioned. At least 10 of you must agree on the same verdict and that verdict must and can only be one of those listed on the form handed you for each separate charge. When at least 10 of you have agreed on the same verdict for each charge, your foreperson shall the verdict on the form as those words appear on the form.
> . . .
> Ten of you must agree on whatever verdict it is for count 1 and count 2.
> . . .
> Once you all have done that, that means that 10 of you have agreed, at least 10 have agreed on the verdict for count 1 and count 2.

---

[1] We also note that during closing arguments, defense counsel *also* incorrectly advised the jury that only 10 of the 12 jurors were needed to convict Hicks of the offense. Specifically, defense counsel stated, "So, the way the law is in Louisiana [sic], ten out of twelve of you would have to vote to find him guilty of second-degree murder," and "Ten out of twelve of you would have to vote to find [sic] Hicks guilty of attempted second degree murder."

We highlight again that Hicks' trial took place in November of 2021, and *Ramos*, *supra*, was issued on April 20, 2020, such that the trial court's jury instruction that only 10 members of the jury were required to reach a verdict was not a correct statement of law at the time.

Second, neither the State nor counsel for Hicks requested that the jury be polled, and there is no indication, from either the record or the minutes of this case, that the jury's verdict as to either conviction was unanimous to render the error harmless. Although La. C. Cr. P. art. 812 does not require jury polling in criminal cases, and defense counsel did not request to poll the jury, we note that the Louisiana Supreme Court has specifically held that a nonunanimous jury issue is an error patent that an appellate court must review. *State v. Corn*, 19-01892 (La. 6/3/20), 296 So. 3d 1043. Specifically, the Court provided:

> If the nonunanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should, nonetheless, consider the issue as part of its error patent review.

The present matter had not proceeded to trial when *Ramos*, *supra*, was decided, and therefore the holding of *Ramos*, *supra*, applies and can be reviewed by this Court as error patent.

Here, the record is absent of any affirmative indication that either of Hicks' convictions was unanimous and the only indication of the jury verdict is the erroneous jury instruction. We highlight that while it is not incumbent upon either the State or defense counsel to poll the jury, such measures would have inevitably clarified any potential deficiencies in the jury verdict. Without such information, coupled with an erroneous jury instruction, we find that the remaining record is insufficient to prove a proper and

7

unanimous jury verdict under *Ramos*, *supra*.  Accordingly, we vacate Hicks'

convictions and sentences and pretermit discussion of his remaining

assignments of error.

## CONCLUSION

For the aforementioned reasons, Hick's convictions and sentences for

the second degree murder of Bowman and attempted second degree murder

of Smith is vacated and the matter is remanded for a new trial.

**CONVICTION AND SENTENCE VACATED; REMANDED**

**FOR NEW TRIAL.**

**HUNTER, J., concurring and assigning additional reasons.**

I concur in the majority's result, as I agree defendant's convictions and sentences must be vacated based on the absence of evidence in the record to establish defendant was convicted by a unanimous jury verdict, as required by *Ramos v. Louisiana, supra*. However, I write separately because I believe the opinion should have addressed the other errors committed by the district court during trial in an attempt to avoid a repeat of such errors on remand.

The right to a fair trial is a fundamental liberty secured by the Sixth Amendment through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Estelle v. Williams*, 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976); *Drope v. Missouri*, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *State ex rel. Weldon v. State*, 15-1181 (La. 5/20/16), 201 So. 3d 885. Further, under Article I, § 16 of the Louisiana Constitution, every person charged with a crime is entitled to an impartial trial.

Herein, I believe the trial court erred in limiting defense counsel's cross-examination of Trooper Ron Huey and James Mason, Jr. An accused has the right to confront and cross-examine the witnesses against him. La. Const. Art. I, §16. In *State v. Giordano*, 259 La. 155, 160, 249 So. 2d 558, 560 (1971), the Louisiana Supreme Court stated:

> The right of confrontation occupies the status of a paramount and fundamental right indispensable to a fair trial. It is a substantial, substantive and valuable right which assures the accused that he shall have the opportunity to be confronted by the witnesses against him and this includes not only the right to attend the trial and hear the witnesses but also the right to cross-examine them at the trial. It is a constitutional right, not a mere privilege.

1

The record reveals when defense counsel pressed Trooper Huey to acknowledge James Mason, Jr. was a suspect when first interviewed, the trial court sustained the state's objection, limiting the defense's questioning. As a result, the trial court improperly restricted defense counsel's ability to raise the issue of Mason's possible motivation for providing a statement to police.

With regard to Mason, he initially denied his prior arrest for attempted murder. Defense counsel impeached him with documentation of the arrest; however, the trial court limited the questioning to the fact of an arrest. I believe defense counsel should have been permitted to address the details of the arrest to give the jury the ability to assess whether Mason was biased and to weigh his credibility.[2] In my view, the limitations on the cross-examination placed by the trial court impacted the fundamental fairness of the prosecution, as it denied defendant his right to a fair trial and due process of law.

In addition, the record shows the trial court erred in failing to exclude Trooper Huey's testimony regarding Smith's identification of defendant as the perpetrator based on the officer's presentation of a single photograph of defendant while Smith was under the influence of pain medication. An identification procedure is suggestive if it unduly focuses a witness's attention on the suspect. *State v. Neslo*, 433 So. 2d 73 (La. 1983). Even should the identification be considered suggestive, it is the likelihood of

---

[2] Generally, evidence of arrests for which there has not been a conviction is not admissible on the issue of credibility. La. C. Cr. P. art. 609.1(B). However, this general rule does not apply when a witness has pending charges against him and the cross-examiner seeks to show these pending charges may bias or influence the testimony. *State v. Butler*, 30,798 (La. App. 2 Cir. 6/4/98), 714 So. 2d 877.

misidentification which violates due process, not merely the suggestive procedure. *State v. Reed*, 97-0812(La. App. 1 Cir. 4/8/98), 712 So. 2d 572. Here, the totality of the circumstances surrounding the highly suggestive single-photo identification procedure, including Smith's limited ability to view the gunman after being shot and Smith's likely impairment from receiving pain medication at the time the photo was presented, create a significant likelihood of misidentification. Consequently, admitting the testimony regarding this suggestive identification procedure was a violation of defendant's due process rights.

Another issue I find vexing involves the remarks made by the assistant district attorney ("ADA") when cross-examining defendant. Within the jury's hearing, the ADA stated defendant decided to testify because he knew he was going to get convicted of murder. The colloquy was as follows:

| [ADA]: | *** You decided to come up here and testify when you saw the way it was going. You sat here and you knew you were a convicted felon, you knew you were gon [sic] get convicted of this murder, you knew you were gon [sic] get convicted of the murder, the attempted murder of |
|---|---|
| [DEFENSE COUNSEL]: | I'd object to that question, Your Honor cause [sic] he has a right to testify at this trial if he chooses to as far as |
| [ADA]: | I'm saying why. This is why he's testifying. He's gonna [sic] be convicted. |
| THE COURT: | Let's sidebar for this one. |

*** 

(Sidebar begins)

3

| | |
|---|---|
| [DEFENSE COUNSEL]: | It calls for a mistrial, Your Honor. To make that statement right there in front of the jury. |
| THE COURT: | All right, hold on. |
| [ADA]: | Facing a conviction for murder. |
| [DEFENSE COUNSEL]: | That he's going to be convicted. He said that. |
| THE COURT: | All right, he did. I heard it. |
| [ADA]: | I'll withdraw it, Judge. |
| [DEFENSE COUNSEL]: | You can't withdraw that. Those people heard that. |
| THE COURT: | Keep your voice down, okay. First objection though, let's go back to the very first. So, he, he's asking questions on cross. Okay? He's making statements on cross. |
| [DEFENSE COUNSEL]: | He can't make a statement like that. That's a prejudicial remark if there ever was one. And it's in front of them. That's a mistrial. You can't do that.<br>*** |
| THE COURT: | *** The first objection was that [defense counsel] indicated that the State was infringing upon or questioning the defendant's right to be able to testify. *** The Court's ruling on this is it's dangerous territory, but at the same time the State is cross examining a witness and he's trying to explore his motive of why, why is he testifying. Okay, his motive behind that. So on that objection I'm going to overrule the objection because the State can question why all of a sudden you coming forward to testify. Okay? He's waived his right now against self-incrimination. So that's the first ruling.<br>*** |

4

| | |
|---|---|
| [DEFENSE COUNSEL]: | Your Honor, as far as the ah, objection would be based upon there was a prejudicial statement made ah, in the presence of the Jury standing right next to the Jury box. And that regarding his guilt, that is highly prejudicial. They determine innocence or guilt, not the prosecutor. And to make that statement right there in front of the Jury. You can't do that. You can't do that. So, I'm asking for a mistrial based upon that. You can't rewound [sic] that. You can't undo that. They heard it. And then, we're talking about them getting ready to go and make a decision, and then they hear him say that. That's my basis, Your Honor. |
| [DISTRICT ATTORNEY]: | I don't think that's unfairly prejudicial. I think it's clear what [the prosecutor] said was, you took the stand because you think this Jury is fixing to convict you. *** So, I just don't think it's unfairly prejudicial. Is it prejudicial? Yes! And it's clear that is what we're trying to do. But I just don't think it's unfairly prejudicial. I understand your point, but. |

\*\*\*

Thereafter, the trial court denied defendant's request for a mistrial. The Court acknowledged the ADA's "comments are prejudicial." However, the court found the comments did not "rise to the level of a mistrial." The court then admonished the jury to disregard the prosecutor's remarks and ordered the clerk to "strike the comments from the record."

La. C. Cr. P. art. 770 provides, in pertinent part:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

\*\*\*

(3) The failure of the defendant to testify in his own defense; or

\*\*\*

An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish

5

the jury to disregard the remark or comment but shall not declare a mistrial.

A mistrial is at the discretion of the trial court and should be granted only where the prejudicial remarks make it impossible for defendant to obtain a fair trial. *See*, *State v. Flowers*, 16-0130 (La. App. 1 Cir. 9/19/16), 204 So. 3d 271, *writ denied*, 16-1871 (La. 9/6/17), 224 So. 3d 983. A mistrial is warranted when certain remarks are considered so prejudicial and potentially damaging to the defendant's rights that even a jury admonition could not provide a cure. See *State v. Edwards*, 97-1797 (La. 7/2/99), 750 So. 2d 893, *cert. denied*, 528 U.S. 1026, 120 S. Ct. 542, 145 L. Ed. 2d 421 (1999).

In my view, the ADA's comment, *i.e.*, defendant was testifying only because he knew he was going to be convicted of the murder and the attempted murder, was intended for the jury to draw an unfavorable inference with regard to defendant's decision to testify. Such a declarative statement, once blurted by any officer of the court, cannot be unheard. Admonishment by the Court aside, and viewing in the light most favorable to the prosecution the exacting effect a mistrial would cause, it nevertheless maintains a failure to meet a narrowly tailored scheme consistent with the infringement upon any person's constitutionally protected rights at all stages of the trial. Thus, the comment was highly prejudicial, and the trial court abused its discretion in denying a mistrial.

While the ADA did not comment on defendant's *failure* to testify in his own defense, he inappropriately questioned defendant's *motives* for doing so. Criminal defendants have an unrestricted right to decide whether to testify, and they are not mandated to provide a motive for doing so. I

6

believe the ADA's remark was calculated to substantially prejudice defendant, and the resultant substantial prejudice influenced the jury and deprived defendant of any reasonable expectation of a fair trial. Further, I do not believe the prejudice resulting from the comment was cured by the trial court's admonition to the jury.

I acknowledge a mistrial, or the declaration of such based solely on overzealous prosecutorial misconduct, is a draconian remedy. However, the Court is perpetually faced with forever striking the balance of comprehensive, robust, transparent, and socially acceptable prosecution for crimes in one scale, coupled with a fair, equally resourced, constitutionally safeguarded and protected defense nestled in the other scale. Considering this record and the applicable law, I must conclude the cumulative effect of these trial court errors violated defendant's right to obtain a fair trial, and I would be jurisprudentially remiss if I decline to delineate the errors to potentially avoid their recurrence.